**People of the State of Illinois, Appellee, v. Frank O'Connell, Appellant.**

**Gen. No. 51,195.**

First District, First Division.

May 26, 1967.

Rehearing denied June 14, 1967.

185

James P. Hecht, of Woodstock, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Frank O'Connell, was convicted of murder after a jury trial and sentenced to a term of 40 to 60 years in the Illinois State Penitentiary. The defendant appealed directly to the Supreme Court and the appeal was transferred to this court.

The defendant contends that (1) his petition for discharge should have been granted as he was denied the right of a speedy trial; (2) the denial of counsel other other than the Public Defender was a violation of his constitutional rights; (3) the denial of motion for a further Bill of Particulars deprived him of a fair trial; (4) venue was not proven beyond a reasonable doubt; (5) the State failed to prove him guilty beyond a reasonable doubt; (6) the trial court erred in denying his motion for a directed verdict at the close of the State's case; (7) the trial court improperly admitted certain testimony on behalf of the State; (8) the trial court improperly refused certain instructions tendered by defendant; and (9) defendant was deprived of a fair and impartial trial by reason of the prejudicial and inflammatory argument of the prosecutor.

We first consider the defendant's contention that he was denied a speedy public trial. It is undisputed that the defendant was arrested on September 13, 1964, and that his trial commenced on Monday, January 11, 1965, which was 121 days after his arrest. Illinois Revised Statutes, 1963, c 38, § 103–5 (a), provides:

> (a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by a competency hearing, or by an interlocutory appeal.

Illinois Revised Statutes, 1963, c 131, § 1.11, provides:

> The time within which any Act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Sunday . . . , and then it shall also be excluded.

It is also undisputed that the 120th day fell on Sunday, January 10, 1965. The defendant concedes that the Supreme Court has held that under the old Criminal Code (Ill Rev Stats 1961, c 38, § 748) when the last day of the fourth-term period fell on a Sunday the commencement of the trial on the following Monday was proper. People v. Hurst, 28 Ill2d 552, 193 NE2d 19; People v. Hannon, 381 Ill 206, 44 NE2d 923. The defendant argues, however, that the time period under section 748 of the old Criminal Code was computed in terms of months and not days as under the new code and that this distinction is important. He insists that regardless of whether the last day falls on Sunday, the defendant must be given a trial within 120 days otherwise it is a denial of his constitutional guaranty of equal protection of the law. He states that, "There is no reasonable basis for the discrimination caused by the Sunday rule," and submits that the application of section 1.11 in criminal cases in no

way meets the standard of equal protection of the law and that it should only be applied in civil cases. Therefore he concludes Sunday, January 10, 1965, should have been included in the computation and that his petition for discharge on January 11th should have been granted.

■ In People v. Walker, 34 Ill2d 23, 213 NE2d 552, the defendant contended that the computation of his four-month period brought him to trial 122 days after he was taken into custody while other persons in custody would be entitled to a discharge on the 121st day as the computation of their four-month period could be 120 days. It was there contended, as here, that the disparity in computation denied him equal protection of the law and the court held there was no merit to the argument. In the new Criminal Code the legislators changed the old rule of four months and substituted the 120-day period while retaining Section 1.11, which excluded Sunday if it fell on the last day, for making the computation of that period. This legislation was intended to avoid as much disparity in the application of the law as was possible and practical. It is uniform for all persons who are in custody and awaiting trial under the same circumstances as the defendant and we hold that its application to the defendant was no denial of equal protection of the law. It is also called to our attention that the trial commenced 122 days after the arrest because the jury was not impanelled and sworn to try the issues until January 12th. The record is clear that the trial commenced on January 11th and we find no merit to this contention.

It is also contended that the refusal of the trial judge to appoint, on defendant's request, an attorney other than the Public Defender, unless the defendant requested a continuance for that purpose, violated his constitutional right to a fair and impartial trial and his right to counsel. The record reveals that the defendant was arrested on September 13, 1964, indicted for murder on December 13, 1964, and arraigned on December 15, 1964, before the

189

Chief Justice. On the latter date the defendant told the court he did not want the Public Defender to represent him. The Public Defender informed the court that he believed the defendant's counsel was Tom Kilroy and the defendant said that while he had no money to retain a lawyer he thought his sister would employ Mr. Kilroy. The court informed the defendant that if Mr. Kilroy wished to represent him he would vacate the appointment of the Public Defender and the cause was assigned to Judge Dahl for trial.

On December 21st, when the case was called, Mr. Kilroy advised the court that he would not represent the defendant. The defendant then said he would rather have a Bar Association lawyer (from the Bar Association Committee representing indigent defendants) and the court stated that he didn't know if the Association would send another lawyer inasmuch as the defendant discharged Mr. Sullivan, a Bar Association lawyer. When the court asked him if he wanted a continuance for the purpose of seeing if the Association would send a lawyer to represent him he replied he was not worried about a continuance in the murder case and that he was ready to go to trial. Mr. Sullivan, who was present, advised the court that he would not represent the defendant, but would cooperate with anyone appointed by the court. Both Kilroy and Sullivan were permitted to withdraw and the Public Defender was appointed and the matter was set for trial on January 4, 1965.

On December 30th, the State, in a petition, requested an extension of the trial date under Ill Rev Stats 1963, c 38, § 103-5(c), alleging that a material witness who is a resident of California was involved in an automobile accident and unable to be present on January 4th. The Public Defender objected to any continuance and informed the court that the defendant told him that, "he feels that at the moment the choice he made was best,

to stay with the Public Defender's office, and not break his fourth term." The Public Defender went on to say, "It then put a bind on me to adequately prepare for this murder trial in the space of a few weeks, and I have been working each day and night on this case in order to be prepared for trial January 4th." Strenuous objections were made to any delay in the trial and when the matter was called for trial on January 4th, the State withdrew the aforementioned petition. After acknowledging a copy of the Bill of Particulars the Public Defender said, "And I'm answering ready, and I understand you will try this within the fourth term."

The trial was continued to January 6th. On that date the defendant answered that he was ready for trial and moved for a further Bill of Particulars which motion was denied and the trial was continued to January 11th. On that date the defendant presented a motion and petition seeking to be discharged on the ground that he was not brought to trial within 120 days from the date of his arrest. This motion was denied, the trial commenced and four jurors were selected on that date.

The defendant contends that contrary to the provisions of Illinois Revised Statutes, 1963, c 34, section 5604 and the Sixth Amendment of the United States Constitution the court refused to appoint counsel for him other than the Public Defender. The record is to the contrary. It shows a diligent and conscientious effort by the trial judge to accommodate the defendant. At one time it appeared that Mr. Kilroy, a counsel of his own choice, or Mr. Sullivan, a member of the Chicago Bar Association committee to represent indigent defendants would represent the defendant, but they declined to do so. Where a continuance of the case for the purpose of again appointing new counsel for the defendant makes it apparent to the court that the trial would commence after the 120-day period, which would result in defendant's

discharge without a trial, the court had no alternative but to inform the defendant that he would appoint other counsel if the defendant requested a continuance for that purpose.

The defendant, for reasons of his own, refused to request a continuance and stated he was ready for trial. At no time, either during the pretrial period or during the trial, or at this late date, has the defendant claimed that the Public Defender was incompetent or negligent in his defense. Indeed the record shows that the defendant cooperated with his counsel and was ably represented by competent counsel who had fully prepared himself for trial. People v. Birdette, 22 Ill2d 577, 177 NE2d 170, cited by defendant, turned on negligent representation by the Public Defender who had not discussed the case with the defendant, which as we have pointed out, and defense counsel concedes, is not the situation in the instant case.

 The defendant further contends that the denial of a further Bill of Particulars deprived him of a fair trial guaranteed by section 9, article 2 of the Illinois Constitution. We agree with the defendant that the purpose of a Bill of Particulars is to provide for "more particular averments in order to enable the defendant to understand the nature of the charges against him or to prepare his defense." People v. Sims, 393 Ill 238, 241, 66 NE2d 86. The record shows that the State filed a Bill of Particulars as follows: "The date of the occurrence was between August 24, 1964, and September 7, 1964." and "The place of the occurrence was in the vicinity of the intersection of Naperville Road and Spaulding Road in Hanover Township, Cook County, Illinois." At the pretrial hearing held on January 6, 1965, the Public Defender orally requested more particular information. He pointed out that the indictment alleged a crime on September 7, 1964, and the Bill of Particulars stated the date of the occurrence was between August

24, 1964, and September 7, 1964, and he wanted a more specific date from the State. The prosecutor replied that he had previously informed the court that to the best of his knowledge the death could have occurred during the span of time listed in the Bill of Particulars and he was unable to fix any further particularity. The motion for a further Bill of Particulars was denied. The granting or denying of a Bill of Particulars rests in the sound discretion of the court and after reviewing the evidence which we shall discuss later, we cannot say that the court abused its discretion. People v. Gray, 251 Ill 431, 96 NE 268.

The defendant next contends that the State failed to prove him guilty beyond a reasonable doubt and the trial court erred in denying his motion for a directed verdict at the close of the State's case in chief. It is the defendant's position that the date of the crime was not proven beyond a reasonable doubt; that there is a conflict in the testimony of Henry Mayberry and Mrs. Lo Turco, the two chief witnesses for the State, regarding defendant's participation in the crime; that their testimony was impeached; and that there is no proof that defendant possessed a gun at the time of the occurrence.

It is established by the testimony of two officers and Robert Vanecko, who performed the autopsy, that the cause of Charles White's death was two gunshot wounds on the back of his head. The two police officers testified that the decomposed body of White was found on September 7, 1964, on the East side of Naperville Road near Spaulding Avenue in Cook County.

Mrs. Lo Turco testified that she met the defendant in July of 1964, while she was separated from her husband, and they lived together in an apartment. Subsequently, on August 1, 1964, they moved to 3753 Windsor where Mrs. Swiech, the defendant's sister, lived in an apartment just below them. In the latter part of August she said she saw Charles White, who had a needle and part

193

of a tube inserted in his right arm, in Mrs. Swiech's apartment and the defendant told his sister to take care of White who had just escaped from the Cook County Hospital. White then lived in defendant's apartment for three days until the defendant found a room for him at 1717–1719 Humboldt Boulevard. She testified that several days later she accompanied the defendant and White to a tavern called "The Spot" and when the defendant went next door to get a bottle of vodka for Henry Mayberry, the bartender, White told her he could go for her and she should leave the defendant and go with him. She also testified that the next morning she told the defendant that White made a pass at her and he said he would take care of it and she would hear about it.

Mrs. Lo Turco further testified that several days later, which was the beginning of September, she saw White and the defendant conversing in the latter's sister's apartment in the afternoon. She said the next morning about 4:30 a. m. the defendant came in their apartment and said, "Baby, I did it . . . I took care of it . . . . You'll read it in the papers." She related that the defendant kept watching television and reading newspapers. She said he told her several days later that, "[H]e wanted me to see on television what he has done for me to believe. He said, 'You didn't believe me, baby. I want to show it to you.'" She testified further he said, "We planned a place where we're going to drop him. We're going to drive the car, and we're going to urinate, . . . we stopped to urinate. As he went and had it out, I shot him in the back of the neck. And that's the way he died, with the thing in his hand."

Henry Mayberry testified that he presently was serving a term in the County Jail for an armed robbery conviction. He said he met the defendant in August of 1964, when he was a bartender at a tavern called "The Spot." He testified that the defendant and Charles White came to the tavern on several occasions and in the latter

194

part of August the two of them were there with Mrs. Lo Turco. On that occasion he had asked the defendant to get him a bottle of vodka and that he returned with it in five minutes. He testified further that in the latter part of August or the early part of September, 1964, the defendant and White were drinking in the tavern for about five hours and that after the tavern was closed the three of them went for a ride in his car. He said that before they left he drank about one pint of vodka himself. He said he didn't know exactly where they went but it was some place west. He said after driving thirty or forty minutes they stopped to relieve themselves, White and the defendant got out and then he heard two gunshots. He said he was starting to get out when the defendant got back in the car and said "Let's go . . . let's get out of here." He testified that when he asked about White, the defendant replied, "That's what happens to people who talk too much," and then the two of them drove back to Chicago.

On cross-examination he said he had been on a drinking spree for several weeks before the occurrence and on the day in question he had quite a lot to drink. He testified that he heard no argument between White and the defendant at The Spot and they were on friendly terms. When he heard the first shot he said he thought a car had backfired, but when he heard the second shot he knew it wasn't the car. He said he didn't know where they stopped, that they had been on the tollway, but hadn't gone too far. He said after the shooting he drove to a parking place, fell asleep and when he awoke the defendant had left. He saw him at the bar the next day, but they didn't converse.

■ The defendant urges that the date of the crime was not proven beyond a reasonable doubt. While admitting it is not necessary to prove a crime occurred on the precise date alleged in the indictment, People v. Taylor, 391 Ill 11, 62 NE2d 683, he submits that some

particular date must be proven. He points out that there is a conflict between the State's two chief witnesses as to the date of the occurrence. It appears that Mrs. Lo Turco testified that she saw the deceased alive on a Monday evening in the very early part of September. According to the calendar the first Monday in September was September 7th. It is clear from the record and the jury could find from all the evidence that the Monday referred to by Mrs. Lo Turco was Monday, August 31st and the early morning hours of September 1st, which was consistent with Mayberry's testimony. It is also urged that the testimony of the two chief witnesses created a serious doubt as to the truth of their stories, in that Mayberry's testimony is utterly improbable and impeached by inconsistent statements and his long criminal record and his intoxication at the time of the crime; and that Mrs. Lo Turco's testimony was impeached by its improbability, inconsistency, exaggeration, her bias and unstable personality. We note that the jury had before it the complete history of Mayberry's criminal record.

■ ■ In essence the defendant is attacking the weight and credibility of the witnesses. As stated in People v. Drumwright, 48 Ill App2d 392, 396, 199 NE2d 282:

> . . . this court will not substitute its judgment on the matter of the credibility of witnesses and the weight to be given their testimony where the jury saw and heard them testify, unless we can say the proof was so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. People v. Palmer, 26 Ill2d 464, 469, 187 NE2d 236.

After a careful examination of the record we are satisfied that there was sufficient evidence upon which the jury based their verdict and upon which the trial judge, who saw and heard the witnesses and heard post-trial motions, could enter judgment. We also hold that the trial

196

judge properly denied the motion of defendant for a directed verdict at the close of the State's case.

■ It is also argued that there was no proof that the defendant possessed a gun at the time of the alleged occurrence which is fatal to the State's case. Mayberry, the only occurrence witness, testified that he never saw a gun. However, uncontradicted evidence establishes that two shots were heard shortly after the defendant and White left the car. White did not return to the car and his decomposed body was later found with two bullets in his head. The defendant told Mrs. Lo Turco, "Baby, I'll take care of him" and that he shot White in the back of his neck while he was urinating, and, he also told Mayberry, "That's what happens to people who talk too much." As we heretofore said there was sufficient evidence to convict the defendant.

■ The defendant also contends that the evidence did not prove beyond a reasonable doubt that the venue of the trial was correct. It is true that while the sole occurrence witness, Mayberry, was completely uncertain as to the site of the killing he was sure that it occurred somewhere west of Chicago. In People v. Mowry, 6 Ill2d 132, 139, 126 NE2d 683, the court stated that:

> It is not necessary, however, that testimony be given in so many words that the crime was committed in a given county in order to establish venue. (People v. Long, 407 Ill 210; People v. Hornaday, 400 Ill 361,) but if, from the facts appearing in evidence, the only rational conclusion which can be drawn is that the offense was committed in the county alleged, it is sufficient. (People v. Allegretti, 291 Ill 364.) To this end, venue may be proven by circumstantial evidence.

In the case at bar there is no question that White was killed by two bullets striking him in the head. Also May-

berry testified that after the two shots were fired White did not return to the car, and from the statements of the defendant about the killing to both Mayberry and Mrs. Lo Turco, it can be inferred that White was instantly killed where his decomposed body was found on the Cook County site.

 The defendant further complains that the court erred in permitting Mrs. Lo Turco to testify, over objection, that while she lived with the defendant she observed seven guns and one rifle in the apartment. It is argued that the admission of weapons in evidence was not sufficiently connected with the crime nor proved to be in defendant's possession or control and therefore is reversible error. In People v. Smith, 413 Ill 218, 222, 108 NE2d 596, cited by defendant, weapons found in a car driven by defendant six months after the murder were admitted into evidence. The car belonged to his father-in-law and the weapons were found in the trunk. The court stated, "This was the car used in the holdup . . . , but there was no showing as to access to the car by the defendant, or as to its use by him on any other occasions," and therefore the shotguns so found should not have been permitted in evidence. In the instant case the jury could find from the evidence that these weapons were kept by defendant in his apartment, under his control, and belonged to him. In Morton v. United States, 183 F2d 844, 845, the Court of Appeals in affirming a murder conviction said:

> Certainly a gun is peculiarly adaptable to the crime of shooting a person. And this appellant's prior possession of the physical means of committing this murder is admissible as some evidence of the possibility or probability of [the defendant] having done it.

We are of the opinion that the court did not err in admitting this evidence, nor do we find any error in admit-

ting evidence of defendant's behavior regarding newspaper and television viewing after he told Mrs. Lo Turco he killed the deceased, or in the evidence showing the defendant's intent to personally find a room for the deceased to hide out in.

 It is next urged that the court erred in refusing to give four instructions tendered by defendant. We have examined the involved instructions and do not consider it is necessary to discuss them in detail. Suffice it to say that they were either erroneous in law or inaccurate statement of facts or were repetitious of other instructions given to the jury. The court gave two instructions dealing with the State's burden of proof and the instructions, as a series, adequately contain the law of the case. It is sufficient if the series of instructions, construed as a whole, fully and fairly announce the law applicable to the theories of the defendant. People v. Sims, 393 Ill 238, 66 NE2d 86.

 Finally it is contended that the prosecutor committed prejudicial error by reason of prejudicial and inflammatory argument. We have considered the entire final argument and feel that the inaccuracies stated by the prosecutor were trivial, but still based on inferences from the evidence. Furthermore, the State was demanding the death penalty for the defendant, and the argument complained of was an attempt to persuade the jury to vote a death penalty. The jury having chosen not to do so, we cannot see how the defendant was prejudiced thereby.

The judgment of the Criminal Court of Cook County is therefore affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.