THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* FRANK O'CONNELL, Petitioner-Appellant.

(No. 60572;

First District (4th Division)—September 10, 1975.

, James K. Gardner and Robert J. Rubin, both of Friedman & Koven, of Chicago, for appellant.

· Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

On January 15, 1965, defendant, Frank O'Connell, was convicted of murder after a trial by jury. On direct appeal to this court his conviction was affirmed. (*People v. O'Connell*, 84 Ill.App.2d 184, 228 N.E.2d 154.) In February, 1969, defendant filed a post-conviction petition. The State moved to dismiss the petition, and on December 11, 1939, said motion was granted. Subsequently, the supreme court vacated the dismissal and remanded the cause with directions to appoint other counsel. On June 27, 1973, defendant filed an amended post-conviction petition. Pursuant to the petition a hearing was conducted on January 30, 1974, at which new counsel represented defendant. After argument by the respective attorneys, the court granted the State's motion to dismiss defendant's amended post-conviction petition. Defendant appeals from the dismissal thereof.

On appeal defendant contends that (1) the nondisclosure by the State of police reports in its possession denied him due process of the law under the United States and Illinois constitutions; (2) the State's misleading disclosures concerning the date of the murder compounded the detrimental effect of the suppression of information contained in the police reports; (3) his conviction was obtained through the knowing use of false testimony; and (4) he was forced by the trial court to choose between his constitutional right to a speedy trial and his right to counsel.

Prior to the hearing on defendant's post-conviction petition, Judge Walter P. Dahl entered an order permitting defense counsel to inspect and copy documents in the control of the police department relating to its investigation into the death of Charles White, the murder victim. These documents were presented at the hearing on defendant's petition and were considered by the court. It was argued then, as it is now, that two police reports, which were not available to the defense at the time of trial, could have been used to impeach the testimony of Henry Mayberry, the State's principal occurrence witness. In view of defendant's contention we must briefly refer to the pertinent testimony produced at trial.

Mayberry testified that he was employed as an extra bartender at a tavern called the Spot. There on occasion he saw defendant, Charles White, and Josephine LoTurco together. One evening he, defendant and White had been drinking heavily for five hours. At 3:30 a.m. they left the tavern and he drove them to a country area west of Chicago. Defendant and White exited the car to urinate. Mayberry testified that he then heard two gunshots. Before he could get out of the car, defendant returned alone and said, "Let's get out of here." When Mayberry asked about White, defendant responded, "That's what happens to people who talk too much." Mayberry testified that he left Chicago on September 5, 1964. He stated that he thought the murder occurred three or four days earlier.

The evidence shows that the badly decomposed body of White was found on September 7, 1964, in a ditch in the vicinity of Naperville Road and Spaulding in Cook County. The condition of the deceased's clothing (trousers unzipped) corroborates that White was urinating at the time he was shot. Further evidence showed that the cause of death was two gunshot wounds to the back of the head. The Coroner's report did not indicate the exact date of the crime and the testimony relating thereto was uncertain.

Mrs. Josephine LoTurco testified that she lived with the defendant. She stated that she told him that White had made a pass at her. De-

fendant assured her that he would "take care of him." One day in early September, defendant returned to their apartment at 4:30 a.m. Mrs. LoTurco and defendant had a conversation. He told her that he "did it" and that he "took care of it." When she inquired what he did, defendant stated that she would read about it in the papers and see it on television. Approximately three days later defendant described to her how he killed White. His description corroborated the version testified to by Mayberry.

The thrust of defendant's appeal is that the nondisclosure by the State of police reports in its possession denied him due process of the law the United States and Illinois constitutions. The State counters that the defense did not include police reports in its request for discovery; and that therefore, the nondisclosure was proper on that ground alone. It is clear from the record that pretrial discovery requests by the defense did not include police reports. However, in view of our decision to review this matter on its merits, we need not pass on this issue.

Defendant emphasizes that at trial no testimony was offered on his behalf. His entire strategy was to attack the credibility of the State's witnesses, particularly that of Henry Mayberry, the State's principal occurrence witness. Defendant argues that had he been advised of the contents of the police reports, he could have cast doubt upon Mayberry's entire testimony. Specifically, he could have shown that White was alive four or five days after the date on which the prosecution maintained he was murdered, or that Mayberry, by his own testimony, was out of town on the day of the murder.

One of the police reports pertained to a statement made by Mrs. Helen Ehrhardt. She related that on September 6, 1964, she and her three children were walking along the road next to the site where White's body was subsequently discovered. They were picking up rocks and searching for golf balls. She stated that she did not see White's body. Upon this statement defendant contends that a juror could easily believe that White was not killed until September 6—a date when Mayberry claimed he was out of town.

Mrs. Ehrhardt again was interviewed by the police at a later date, and was asked if the body could have been in the ditch without her noticing it. She replied, "Of course." She further recalled that at one point during their walk her eight-year-old daughter said, "Look there's a body." Mrs. Ehrhardt thought she was kidding. We also note that the police procured a statement from Mrs. VanDelinder, the woman who first discovered the body on September 7. She stated that the body was difficult to see and that it could not be seen from the road because it was too far down in the ditch.

The other police report that defendant claims was important to his

defense indicates that the Kane County Police interviewed six witnesses to an armed robbery that took place in the morning of September 5, 1964. The witnesses identified Charles White as one of the participants in the crime. Defendant points out that Mayberry testified that he left Chicago on September 5, 1964, and that the murder had occurred several days earlier.

Clearly, there is some question as to the date on which the murder was committed; but proof of the precise date of the commission of an offense as alleged in the indictment is unnecessary, unless the allegation of a specific time is an ingredient of the crime or the statute of limitations is involved. (*People v. Custer*, 11 Ill.App.3d 249, 298 N.E.2d 753.) The dates alleged for the crime fall within a short time span. The defense of alibi is not in issue. Consequently, the two police reports are important only insofar as they affect the credibility of Mayberry's testimony.

At trial defense counsel ably attacked Mayberry's credibility on several fronts. First, he elicited from Mayberry his numerous past felony convictions. In closing argument he dwelt at great length on the fact that Mayberry admitted his full criminal record only after much prodding. The jury was given an instruction regarding the credibility of a witness who has a criminal record. Defense counsel further argued that Mayberry left in flight because he was "the one who did the job" and in his opinion should have been brought to trial for this crime. Numerous inconsistencies in Mayberry's testimony were emphasized. Defense counsel also established that Mayberry was in the middle of a two-week drinking spree at the time the offense was committed. He suggested that Mayberry's conduct after the alleged crime did not indicate that he was at the scene of the murder. Finally defense counsel stressed in his closing argument that the date on which the murder occurred was uncertain. Twice he advised the jury that the State maintained the crime was committed between August 24 and September 7. He further argued that "No one in this case knows when it occurred. No one can put a date on this. They can tell you when, about, it was." Defense counsel additionally pointed out that there was no testimony establishing how long the body had lain in the ditch.

The judge who conducted the hearing on defendant's amended postconviction petition also presided at the trial. He knew the jury was aware that the exact date of the death was uncertain. Consequently, the court believed that even if the defense had access to the two police reports, the result would have been the same.

We hold, as did the trial court and jury, that the defendant was proven guilty beyond reasonable doubt. We are satisfied that the result would

have been no different had the defense had access to the reports. The jury was aware there was no certainty as to the date of the crime. Defense counsel emphasized this point in his closing argument. The information contained in the reports was merely cumulative, and if brought to the attention of the jury would not have altered their verdict. The defendant received a fair trial and has failed to allege facts which raise substantial constitutional questions requiring a further evidentiary hearing. Defendant's contention that his conviction was obtained through the knowing use of false testimony relates to inconsistencies of evidence presented by the prosecution and was raised on direct appeal. Other matters raised on this appeal have been considered and are rejected.

For the reasons stated, the dismissal of defendant's amended post-conviction petition is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.