THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES THOMAS, Defendant-Appellant.

(Nos. 53240, 53608 cons.;

First District—December 7, 1970.

Gerald W. Getty, Public Defender, of Chicago, (Saul H. Brauner, Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Kavanaugh, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The defendant was convicted on the charge of rape, two offenses of indecent liberties and one offense of devious sexual assault, after a trial by jury. He was sentenced for a term of 15 to 20 years on the charge of indecent liberties (count 1); 15 to 20 years on the charge of indecent liberties (count 2); 15 to 30 years on the charge of rape (count 3); and 10 to 14 years on the charge of deviate assault (count 4), the sentences to run concurrently.

On appeal, the defendant contends, (1) that his alibi was unimpeached; (2) the identification by the prosecutrix was made by police suggestion and the State failed to prove the defendant guilty beyond a reasonable doubt; (3) the testimony of the prosecutrix was confusing and contradictory to other State witnesses, leaving a doubt as to the defendant's guilt, and (4) it was error to convict the defendant of four crimes arising out of the same act and involving the same victim.

Constance Robinson who was 15 years old, left a store at 61st and Racine about 9:15 P.M. on November 15, 1965. On her way home a man followed her. She started to run and he caught her, put a gun to her back and directed her to keep walking and to put a scarf around her eyes. He took her under a porch at 6032 South May Street, ordered her to take off all her clothes, which she did, and he put his penis in her vagina. He then ordered her to put her mouth on his penis and she complied. When a dog barked he took her to another yard. There the scarf fell from her eyes when she was near him. With the aid of a light on the porch she said she had the opportunity to observe his face. He put his finger in her vagina and bit her breast. Then he ran and she went to the apartment of Mrs. Blanche Johnson and immediately complained to her that she had been raped. The police came and she was taken to a hospital. The next day she went to a police station and identified the defendant as her assailant from a line-up of four persons.

Blanche Johnson who resided at 6032 S. May Street testified that the Constance Robinson who she had seen earlier on the evening in question, knocked on her door about 9:00 P.M. and told her she had been raped. She was crying, her hair was mussed up and her clothes were muddy. Mrs. Johnson then called the police. The following day she found a wallet at the foot of her stairs and upon inspection found that it was the defendant's wallet. She called the police and gave them the wallet.

The defendant's wife testified that her husband and James Anderson were at home until 9:30 P.M. of November 15. James Anderson testified that he met the defendant about 8:30 P.M. and they went to defendant's

home and stayed there for about one and one-half hours and then they were in a tavern until 10:45 P.M.

William Callahan, a police officer who had arrested the defendant on November 16, 1965, conducted a line-up of four men of approximately the same ages and the complainant identified the defendant as her attacker. He then had the men change coats while she was out of the room and she again identified the defendant.

In attacking the sufficiency of the evidence, the defendant's principal thrust is based on the proposition that a positive alibi established by the defendant cannot be disregarded where the only other evidence contradicting it rests upon identification which was doubtful, vague and uncertain. It is true that evidence fairly tending to establish an alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime if, from the entire record, there is a reasonable doubt of the guilt of the defendant because of the uncertainty of the identification. (*People v. Kidd* (1951), 410 Ill. 271, 102 N.E.2d 141.) Where such is the case, courts of review have not hesitated to reverse. *People v. Gardner* (1966), 35 Ill.2d 564, 221 N.E.2d 232; *People v. McGee* (1961), 21 Ill.2d 440, 173 N.E.2d 434.

■■ In the case at bar, the identification by the victim was positive, certain and unshaken even after a vigorous cross-examination by defendant's personal counsel. The complaining witness had an opportunity to see her assailant before he caught up to her. She was with him for several hours. She had ample opportunity to see his face under a porch light when as she said the scarf fell from around her eyes. The victim identified the defendant from two different line-ups on the following day. We are not in accord that the line-ups tended to create an atmosphere of suggestibility by the police officers as concluded by the defendant. The persons in the line-up were negroes of the same approximate age, weight and height. There is nothing in the record to suggest that because the complaining witness talked to the police officers before she identified the defendant in the line-ups her identification testimony was tainted by the suggestibility of police officers as charged. When positive identification is made a guilty verdict may be sustained notwithstanding there may be otherwise uncontradicted alibi evidence. *People v. Speck* (1968), 41 Ill.2d 177, 242 N.E.2d 208.

In addition to the positive identification testimony Mrs. Johnson found the defendant's wallet at the foot of her porch stairs where Constance Robinson was attacked the day before. This crucial evidence strongly tends to contradict the alibi evidence. The jury, as the trier of

the facts, is not obligated to believe alibi witnesses. *People v. Setzke* (1961), 22 Ill.2d 582, 177 N.E.2d 168.

■■ There were discrepancies between the testimony of the complaining witness and Mrs. Johnson as to the exact hours that Constance Robinson was at Mrs. Johnson's home, before and after the attack. The exact span of time is of little importance in a case where the defendant's alibi placed him away from the scene of the crimes. It was a matter of weight and credibility for the jury who heard and saw the witnesses, and who heard argument of counsel. This is also true of the fact that the record does not disclose any description given to the police by the victim of her assailant when they interviewed her shortly after her complaint or that no medical testimony was tendered at the trial. The absence of any testimony by her of the description of her attacker and of the medical examination in the record is accountable since she was not questioned regarding it. She did describe the defendant's clothes and a conversation he had with her concerning her age. It is apparent that the State considered the testimony presented by it sufficient to convict the defendant of the crimes charged beyond all reasonable doubt. Also the defense could have brought out the details of these incidents if they concluded it would have aided the defendant. We consider these matters in the nature of trial strategy.

It is peculiarly the province of the jury to weigh the evidence, judge the credibility of witnesses and determine the facts under the proper instructions of the court. A reviewing court will not set aside a jury's verdict of guilty and the judgment entered thereon unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Sumner*, 43 Ill.2d 228.) We are unable to say, after a careful analysis of the record, that the evidence indicates a reasonable doubt of guilt. In our opinion, the evidence was sufficient to establish the defendant's guilt.

We consider next whether it was error to convict the defendant of four separate crimes which allegedly arose out of the same transaction. In Count I, the defendant was charged with the offense of indecent liberties, in that he had sexual intercourse with a child under sixteen years. In Count II, he was charged with indecent liberties in that he lewdly fondled a child under sixteen years of age. In Count III, he was charged with the offense of forcible rape, and in Count IV, he was charged with the offense of deviate sexual assault in that he, by force, compelled his victim to submit to an act of oral copulation.

We are of the opinion that only the sentences on the charges of rape and of deviate sexual assaults should have been imposed. In *People v.*

*Duszkewycz* (1963), 27 Ill.2d 257, 189 N.E.2d 299, the Supreme Court held that earlier decisions made it "clear that two punishments cannot be imposed for a single act, even though different ingredients are involved in the two crimes "of forcible rape and incest." In the case at bar, the offenses of rape and deviate sexual assaults necessarily include the lesser offenses of indecent liberties. Even though the sentences on the two counts of indecent liberties are to run concurrently with the other two sentences, the judgment nevertheless should have been for the greater offenses which necessarily included the lesser offenses. *People v. Schlenger* (1958), 13 Ill.2d 63, 147 N.E.2d 316; *People v. Ruiz* (1967), 82 Ill.App.2d 184, 226 N.E.2d 438.

■■ The two separate judgments finding the defendant guilty of indecent liberties is reversed. The judgment finding the defendant guilty of forcible rape and his sentence of 15 to 30 years in the penitentiary is affirmed. The judgment finding the defendant guilty of deviate sexual assault and his sentence of 10 to 14 years in the penitentiary is affirmed.

Reversed in part, affirmed in part.

MURPHY and ADESKO, JJ., concur.