THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD GRIFFIN *et al.,* (Impleaded), Defendants-Appellants.

(No. 55586, 56192 cons.;

First District (5th Division)—May 18, 1973.

194

Julius Lucius Echeles and Carolyn Jaffe, of Chicago, for appellant Montell Jackson.

James J. Doherty, Public Defender, of Chicago, (Lee T. Hettinger, Assistant Public Defender, of counsel,) for appellants Griffin and McKinney.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Bernard S. Armel, and James Staruck, Assistant State's Attorneys, of counsel) for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, the defendants were found guilty of the murder of Gregory Greene and the attempt murder and aggravated battery of Edward Payne. They were sentenced as follows: on the murder charge, Ricardo Griffin—15 to 22 years, Richard McKinney—14 to 17 years and

Montell Jackson—14 to 20 years; on the attempt murder charge, Ricardo Griffin—8 to 15 years, Richard McKinney—5 to 10 years and Montell Jackson—7 to 14 years; on the aggravated battery charge, Ricardo Griffin—7 to 10 years, Richard McKinney—2 to 7 years and Montell Jackson—3 to 10 years. All sentences to run concurrently. A fourth defendant, Walter Jackson, was discharged on a finding of not guilty at the close of State's evidence. On appeal each of the defendants contends:

1. He was not proven guilty beyond a reasonable doubt.
2. His conviction and sentence for aggravated battery was improper.

In addition, the defendant Montell Jackson contends he was denied a fair trial because:

1. The trial court improperly denied suppression of identification testimony, in that:
   (a) legal counsel was not present at the pre-trial identifications,
   (b) the identification testimony of witness Clyde Watson resulted from a suggestive identification procedure.
2. The court questioned witnesses and brought out matters prejudicial to him.

It appears that about 10:00 P.M. on the evening of May 28, 1969, about 15 assailants jumped out from behind posts under an 'El' structure and started shooting at Gregory Greene, Edward Payne, Clyde Watson and a person named Orrie. Greene was killed and Payne was wounded. Payne testified on trial that he had been drinking and didn't know what happened. The person named Orrie did not testify.

Watson stated that he saw Montell Jackson (hereinafter called Montell) fire a pistol at him and his friends and when Greene fell, he saw Ricardo Griffin shoot him while he was on the ground. He also observed Richard McKinney holding a shotgun and standing near Montell but he did not see McKinney fire the gun.

When the shooting began Watson took cover about 65 feet away behind a post about two feet wide and viewed the attack with one eye as he looked around the post. He could see the assailants, particularly the three defendants, who were under a light and about three or four feet in front of the others. The entire episode lasted about three minutes during which time he was viewing all of the assailants. The first assailant he saw (later identified as Montell Jackson) had shiny hair and he observed his face under the light for "about one minute. Long enough for me to remember."

He did not know any of the assailants but stated he later gave the police a description of them and told the police he had seen their faces

and would be able to identify some of them if he saw them again. About 20 minutes after the occurrence he saw three young men in a police squadrol and identified two of them as assailants but could not identify the third. He did not know their names but later learned them to be Richard McKinney and Walter Jackson. During trial he identified Montell, Griffin and McKinney as assailants but he was not sure that Walter Jackson was among them and Walter Jackson was thereupon discharged at the close of the State's evidence.

Ardell Chambers, a witness for the State, identified Griffin and Montell in court and testified that he, Benny Stewart and Clyde Jones were in an alley about 1½ blocks from the place of the shooting when Griffin and Montell ran into the alley towards them. Montell told them "get out of the alley because somebody just got shot." He then said "somebody just got blown away" and at the same time Griffin was moving his right index finger forward and back. Montell said that Griffin had fired the shots and Griffin said nothing. Chambers had known both for a number of years. He and his twin brother were taken into custody because of the shooting and he was also charged with a robbery. He was held in the Audy Home where, after about one month, he told the police what had occurred in the alley. He had been visited at the Audy Home by the police for about ½ hour every day for one week before his statement was given and he had been told he might get 20-25 years for the murder of Greene. He was released about one week after he told what happened. He stated he had not been promised any kind of consideration for testifying and that he did tell Montell and Griffin a few days before trial that he had been subpoenaed and was told by the police he would go to jail if he did not testify.

Benny Stewart, a State's witness who was with Chambers, testified that he saw Montell and Griffin run into the alley screaming "we just shot a Stone." He gave a statement to the police on June 17, 1969, because the police told him he would go to jail if he didn't. He didn't tell the police prior to this time because he didn't want to get Montell and Griffin in trouble. Upon questioning by the court he testified that Montell said "we shot a Stone" and that Griffin didn't say anything but that Griffin made motions with his finger like he was pulling the trigger of a gun.

Defendants Montell and Griffin testified that at the time of the shooting they were on Montell's front porch with some other friends and their testimony was corroborated by Calvin Herman and Stewart Hill who stated that they were on the porch with the defendants for the entire evening. In addition, Marjorie Harmon, a neighbor and resident of the community for 20 years, testified that she knew Montell well

and that his reputation in the community for honesty and integrity was good.

Montell first contends that legal counsel should have been present at the pre-trial identifications. In his reply brief he agrees that this contention is no longer well taken in view of the holding in *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, that there is no right to counsel at pre-indictment confrontations.

He also asserts the court erred in permitting Watson to identify him at trial. He maintains, citing *United States v. Wade* (1967), 388 U.S. 218, 87 S.Ct. 1926, and *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, that Watson's in-court identification was the fruit of suggestive pre-trial confrontations. In support he argues (1) that since Watson had described one of the assailants as having shiny hair, it was conducive to mistaken identification to bring about a confrontation where Watson viewed Montell who had shiny hair and (2) there was no independent source upon which the in-court identification could have been based since Watson's opportunity to observe Montell during the crime was restricted and impaired.

After the shooting Montell was driven around the neighborhood by the police to point out Ardell Chambers, known to him but not to the police, and he then went to the police station with Officer O'Hagan who wanted him to identify Chambers from the police books.

Montell testified that Watson identified him twice at the police station. Initially, he was identified when he was in a corridor waiting to go into the book room. At that time he apparently was not in custody and Officer O'Hagan was not with him. About 20 minutes later, when he was examining the police books, Officer O'Hagan brought him from the book room to the detective's room where Watson again identified him. Both of these identifications occurred about two hours after the shooting and from the record it appears that there were no verbal suggestions or encouragements by the police before either of the identifications.

Montell argues that even though there was an initial unplanned confrontation in the police station corridor before the planned confrontation in the detective's room and, although there was no official misconduct underlying either confrontation, the suggestiveness is present and prejudicial because (1) Montell was the only person Watson could have identified at either time, (2) Montell's hair was shiny and Watson had previously told the police an assailant had shiny hair and (3) Watson's on the scene observance was impaired by the physical conditions at the time of the shooting. Concerning these contentions, from our examination of the record, we note (1) that the first meeting was unplanned and took place in a corridor when Montell was not in custody and the police

officer was not present. Watson was not asked to make an identification at that time. (2) Watson testified that his identification was not based upon the fact of Montell's shiny hair but because he had seen Montell's face at the scene of the shooting and (3) concerning Watson's on the scene observation we note Watson testified that Montell was the first assailant he saw, that he saw Montell shoot at him and his friends, that Montell was in front of the others and Watson observed his face under a light for about one minute. Watson also stated he observed the assailants for about three minutes and there was sufficient lighting to see the faces of the assailants and on this point he was corroborated by two police officers, both called to the stand by Montell, *i.e.*, Richard Cooper who said the lighting was good and Kenneth Woods, the first officer to arrive, who testified the area was well lighted. Albert Barry, also called by Montell, was a Chicago Transit Authority employee assigned to a nearby 'El' station, who did not go to the scene but was familiar with the area, testified that the lighting was not very bright, just above dim.

A short time after the shooting and again a short time prior to trial the police showed Watson a number of photographs and from them he identified Montell, Griffin and McKinney as assailants.

■■ The burden of proof is upon a defendant to establish the identification procedure to be so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *People v. Watkins* (1970), 46 Ill.2d 273, 278, 263 N.E.2d 115.

■■ In *People v. Tuttle* (1972), 3 Ill.App.3d 326, 278 N.E.2d 458, the court set forth principles concerning the admissibility of in-court identification:

> "In order to suppress an in-court identification on the ground of improper pre-trial identification procedures, a defendant bears the burden of proving two facts. First, he must establish that the pre-trial identification procedures were so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States,* 390 U.S. 377, 384; *People v. Holiday,* 47 Ill.2d 300, 307-308.) Second, to the extent that suggestive procedures are established, they must be shown to have been 'unnecessary' under the totality of the circumstances. (*Stovall v. Denno,* 388 U.S. 293, 302; *People v. Lee,* 44 Ill.2d 161, 169.) However, even if a defendant successfully establishes the above two elements, an in-court identification may nonetheless be admissible if the State shows 'by clear and convincing evidence, that such in-court identification had an independent origin, arising from other uninfluenced observation of the defendant'. *People*

*v. McMath*, 104 Ill.App.2d 302, 313; affirmed, 45 Ill.2d 33; see also *People v. Fox*, 48 Ill.2d 239, 245."

■■ Our review of the record discloses that the trial judge found the testimony of Watson to be positive and credible and the testimony of Montell to be unconvincing. We have considered this finding, the totality of the circumstances surrounding the 'on the scene' and the pre-trial identifications of Montell and we conclude that he has failed to establish that the pre-trial identifications were unconstitutionally suggestive.

■■ We conclude also, after consideration of the findings of the court and the totality of the circumstances, that there was sufficient basis for a determination that Watson's on the scene observation was of sufficient independent origin to support his in-court identification of Montell.

■■ Montell also maintains that the trial judge unfairly questioned witnesses and brought out new matters prejudicial to him. No objection was made at trial to the court's questions and this precludes him from claiming prejudice here. (*People v. Graham* (1970), 127 Ill.App.2d 272, 262 N.E.2d 243.) Neither has he pointed out the manner in which he was prejudiced. Nevertheless, we have examined his abstract references and find that in each instance the trial judge's questions were made for the purposes of clarification. This was his right, *People v. Palmer* (1963), 26 Ill.2d 464, 187 N.E.2d 236, and we do not believe that he abused his discretion.

We next turn to the contentions of each of the three defendants that he was not proven guilty beyond a reasonable doubt.

As to McKinney it is argued that the State's evidence is insufficient because the only evidence offered against him was the vague, doubtful and uncertain identification testimony of Watson whose vision was impaired not only by distance and darkness, but also by the fact that he watched the attack with one eye. Montell and Griffin argue that the State failed to sustain its burden because (1) of the lack of time and opportunity to make an independent identification, (2) the circumstances surrounding the testimony of State's witnesses, Ardell Chambers and Benny Stewart, were such that little, if any, weight should be given to their testimony, and (3) the alibi testimony of these defendants was unrebutted.

Watson testified that McKinney was among the assailants and one of a small group with Griffin and Montell who were in front of the others and that he was carrying a shotgun. He was identified by Watson about 20 minutes after the shooting.

It is noted that the trial court found that the testimony of Watson

was "credible and believable and positive" and that the testimony of Montell and Griffin "was unconvincing" and that Watson "did, in fact, see the faces of the three defendants and saw them under the 'El'." He also found that "Benny Stewart corroborated the testimony of Ardell Chambers and both of them corroborated the testimony of Watson."

■■ It is settled that the testimony of a single witness, where positive and the witness credible, is sufficient to sustain a conviction, even though the testimony is contradicted by the accused. *People v. Hudson* (1972), 5 Ill.App.3d 686, 284 N.E.2d 33.

■■ The trial judge heard all of the testimony concerning all three defendants including the alibi witnesses. He was not required to believe the alibi testimony over that of State's witnesses, Watson, Chambers and Stewart. (*People v. Setzke* (1961), 22 Ill.2d 582, 586, 177 N.E.2d 168.) He had the opportunity of observing the witnesses and hearing their testimony. It is his function to determine credibility. (*People v. Scott* (1966), 34 Ill.2d 41, 213 N.E.2d 521.) It is well established that unless there is strong evidence to the contrary, a reviewing court should not substitute its conclusions for those of the trial judge. *People v. Mundorf* (1968), 97 Ill.App.2d 130, 239 N.E.2d 690.

■ We have considered the entire record in the light of these principles and we conclude that the evidence was sufficient to justify the findings of the trial judge that each of the defendants was guilty beyond a reasonable doubt.

■■ The final contention of each of the defendants is that his conviction and sentence for aggravated battery was improper since both the charges of attempt murder and aggravated battery arose out of the same conduct. In *People v. Valentine* (1973), 10 Ill.App.3d 678, 294 N.E.2d 717, it was held: "Where defendant is convicted of multiple offenses which arose from a single act, the court must vacate the sentence of aggravated battery which is the less serious offense." Replying thereupon, the State has confessed that it was error to sentence defendants for both attempt murder and aggravated battery.

We agree that the conviction of attempt murder and aggravated battery arose out of a single act and that the sentence of each defendant for aggravated battery must be vacated.

Accordingly, those portions of the judgment of the trial court sentencing defendants, Ricardo Griffin, Richard McKinney and Montell Jackson, on the charges of murder and attempt murder are affirmed; and those portions of the judgment sentencing these defendants on the charge of aggravated battery are vacated.

Judgment affirmed in part, judgment vacated in part.

DRUCKER, P. J., and LORENZ, J., concur.