THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES HENDERSON, Defendant-Appellant.

Third District   No. 74-258

Opinion filed June 9, 1976.

STOUDER, J., specially concurring.

Verlin Meinz and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (Bart Markese, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant was convicted of aggravated battery and attempt murder following a jury trial in the Circuit Court of Will County. He was sentenced to a term of imprisonment for not less than 15 years nor more than 30 years for the attempt murder conviction with no sentence being imposed for aggravated battery. The following issues are presented for review: (1) whether the evidence is sufficient to prove defendant's guilt beyond a reasonable doubt, (2) whether news coverage during the course of the trial deprived defendant of a fair trial, (3) whether the giving of a flight instruction was prejudicial error, and (4) whether aggravated battery was a separate offense.

William Boatwright, one of three occurrence witnesses for the State, testified that on the evening of May 11, 1973, he was watching television at a friend's apartment in Joliet. Between 8:30 and 9 p.m. he heard gunshots and looked out the window, but he did not see anything unusual. Approximately 20 minutes later he heard "three or four" shots. Looking out the window, he saw a man standing beside a gray car with a black top and holding what appeared to be a handgun. The man got into the car and drove off, and Boatwright then noticed a woman lying on the sidewalk. Boatwright ran downstairs, and when he looked out at the street he saw the same car parked nearby. The man whom Boatwright had seen minutes before was approaching the woman lying on the sidewalk and was carrying what appeared to be a rifle. As the woman attempted to sit up, the man shot her from a distance of one or two feet with a shotgun. The man got back into the car and drove off. Boatwright stated that he would be unable to identify the assailant.

The testimony of Joe Williams was introduced through an evidence deposition, since a severe illness prevented Williams from appearing in court. Williams stated that he had known both defendant and the victim, Marthaniel Griffin, for a long time. Williams had been working at the Elk's Club during the evening of May 11, 1973 and saw Miss Griffin in the club drinking, but did not have time to talk with her. He and Miss Griffin left the club at approximately 9 p.m. Outside, they stood on the sidewalk and discussed going to a nearby party and began crossing the street. As they got to the center line, a car containing three people, which Williams described as a light car with a dark top, pulled up behind him and stopped. Miss Griffin walked over to the car while Williams crossed the street and waited for her. Williams heard two shots, and saw Miss Griffin run and fall on the sidewalk near where he was standing. As Williams tried to help her up, he felt something behind him and backed away. He

then saw defendant, who was standing over Miss Griffin, shoot her with a sawed-off shotgun. Williams stated that there was a nearby street light and that he had a good opportunity to view defendant. On cross-examination, Williams admitted that he had not given this account to the police, even though the police had questioned him about the shooting.

Marthaniel Griffin testified that she had lived with defendant for 15 months, until defendant terminated the relationship in March of 1973. On May 11, 1973, she went to the Elk's Club in the afternoon and consumed several drinks. After leaving to visit a friend she had a chance meeting with defendant and told him that she had no time for him. She eventually returned to the Elk's Club and remained until 9 p.m. Upon leaving the Elk's Club she met Joe Williams, and they decided to go to a party. A white car with a black top, which was like a car often used by defendant drove down the street and almost hit Williams and Miss Griffin as they were crossing the street. The car came back and parked, and defendant got out from the back seat, saying, "Marty, you don't make no _____ out of me." He then fired two shots from a handgun. Miss Griffin fell on the sidewalk and was attempting to get up with Williams' assistance when Williams let go of her, and she fell back onto the sidewalk. She then saw defendant pick up her purse and stand over her with a sawed-off shotgun. Some days later while in the hospital recovering from gunshot wounds, Miss Griffin identified defendant as her assailant from several pictures.

Other evidence by the State showed that a shooting had occurred a few blocks away approximately one-half hour before Miss Griffin was shot, which explained why Boatwright heard gunfire at two different times. The officer investigating the Griffin shooting testified that he found a large amount of blood and a wig belonging to Miss Griffin at the scene, but no purse. Medical testimony established that Miss Griffin suffered wounds from shotgun pellets and a .32 bullet. An FBI agent testified that he arrested defendant in Chicago on August 1, 1973.

The defense presented the testimony of a Joliet police officer who interviewed Joe Williams four months before the trial. In this interview Williams had stated that on the evening of the shooting a car drove by, Williams pushed Miss Griffin down, and shots were fired at Miss Griffin from the car. Williams named defendant as the person firing the shots.

Defendant testified that on the afternoon of May 11, 1973, he was involved in an argument with Miss Griffin. Following this he obtained a ride to Chicago and remained there looking for employment until he was arrested. He admitted that he knew the police were looking for him at least two weeks before his arrest. Five witnesses testified to seeing defendant at a party in Chicago at various times from late afternoon of May 11 to the following morning.

Defendant first contends that the evidence is insufficient to support his conviction, citing various discrepancies in the testimony of the State's witnesses, an alleged bias in Miss Griffin due to her past relationship with defendant, and defendant's corroborated alibi. We disagree.

A reviewing court will not set aside the jury's verdict unless the evidence is so palpably contrary to the verdict or so unsatisfactory as to cause a reasonable doubt of defendant's guilt. (*People v. Peto* (1967), 38 Ill. 2d 45, 230 N.E.2d 236; *People v. Thomas* (1st Dist. 1970), 130 Ill. App. 2d 1107, 266 N.E.2d 721.) Inconsistencies or discrepancies in the testimony of witnesses, as well as any possible bias or interest, affect the credibility of witnesses and the weight to be given their testimony, which are matters peculiarly within the province of the jury. *People v. O'Connell* (1st Dist. 1967), 84 Ill. App. 2d 184, 228 N.E.2d 154, *cert. denied* (1968), 391 U.S. 969, 20 L. Ed. 2d 883, 88 S. Ct. 2042.

In the instant case there were some inconsistencies in the testimony of the three occurrence witnesses. Boatwright did not identify Williams as a party at the scene of the shooting, and there were discrepancies in the testimony of Williams and Miss Griffin regarding the sequence of events prior to the shooting. In contrast to this, however, all three witnesses testified that the assailant emerged from a similarly described car and testified to a chain of events whereby Miss Griffin was shot first with a handgun and then with a shotgun. There was clear and unequivocal identification of defendant as the assailant by Miss Griffin and Williams, both having ample opportunity to observe defendant. The jury could properly consider each witness's ability to remember and opportunity to observe and could weigh any discrepancies in light of all the evidence before it.

■■ We are not persuaded otherwise by the fact that defendant presented an alibi which was corroborated by several witnesses. The credibility of these witnesses was also an issue for the jury's determination. A jury is not required to believe an alibi, even where that alibi is corroborated, if identification of the defendant as the perpetrator of the offense is positive. (*People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378; *People v. Hodges* (3d Dist. 1974), 20 Ill. App. 3d 1016, 314 N.E.2d 8.) Upon review of the record, we believe that the evidence is sufficient to establish defendant's guilt beyond a reasonable doubt. See *People v. Murray* (1st Dist. 1975), 34 Ill. App. 3d 521, 340 N.E.2d 186; *People v. Dillon* (1st Dist. 1975), 28 Ill. App. 3d 11, 327 N.E.2d 225.

Defendant next contends that a mistrial should have been granted due to prejudicial news reports.

On the fourth day of trial, defendant moved for a mistrial based on a radio broadcast and newspaper article which reported that the police were interviewing a State witness who had been threatened and that the

trial judge had ordered increased security due to the threats. The next day a *voir dire* of the jurors was conducted, during which each juror was examined outside the presence of the other jurors. After each examination the juror was not permitted to mingle with unexamined jurors and was admonished not to discuss the examination with other jurors.

The examination revealed that eight jurors and one alternate had read or heard something about the trial. Of these, six jurors and the alternate had read or heard news reports which had generally reported on the progress of the trial and named witnesses who had testified. The seventh juror stated that he had picked up a newspaper at home and noticed an article headline which had to do with security at this trial. He stated that he did not read the article and that this incident would not affect his deliberations. The last juror stated that he had read the article concerned with the threats and increased security. He stated that this would not affect his deliberations because he did not put much credence in the article. In the juror's opinion, the threat could have been a prank, or it could have been perpetrated by someone wishing to influence the jury to defendant's detriment as easily as by someone attempting to influence that witness's testimony. After hearing arguments by counsel, the trial court denied defendant's motion for a mistrial.

The granting of a mistrial due to prejudicial publicity is a matter within the sound discretion of the trial court, but an abuse of that discretion will result in reversal. (*People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61.) A juror's statement that a news report will not influence his decision is not conclusive, and the trial court should consider the nature and contents of the news report, whether any jurors have been exposed to the news report and whether, under the facts and circumstances, exposure to the news report would or could affect the jury's deliberations. (*People v. Gambino* (1957), 12 Ill. 2d 29; 145 N.E.2d 42, *cert. denied* (1958), 356 U.S. 904, 2 L. Ed. 2d 582, 78 S. Ct. 566; *People v. Cox* (4th Dist. 1966), 74 Ill. App. 2d 342, 220 N.E.2d 7. However a mistrial is not warranted in every situation where the jury has been exposed to potentially prejudicial news coverage. In *People v. Lampson* (3d Dist. 1972), 6 Ill. App. 3d 1099, 1104, 286 N.E.2d 358, 363, this court stated:

> "Unquestionably an accused is entitled to a fair trial and his rights must be zealously guarded by court and counsel, but a reversal is not indicated merely because the newspaper prints some statements derogatory to a defendant during the course of a trial and this is true even if the jurors have knowledge of such information. To warrant a reversal it must reasonably appear that the jury or at least some of them have been influenced or prejudiced to the extent that they cannot be fair and impartial."

In the instant case, six of the jurors remembered reading or hearing

news reports which discussed the general progress of the trial. These news reports which contained no prejudicial material and merely reported on proceedings which had already been held in open court before the jury, did not interfere with defendant's right to a fair trial. *People v. Hurley* (4th Dist. 1973), 10 Ill. App. 3d 74, 293 N.E.2d 341.

■ 2   The two remaining jurors had read or seen an article which discussed threats directed to a State witness and increased security, with one juror seeing the article headline only and the other juror reading the contents of the article. An article of this nature is potentially prejudicial to defendant because of the possibility that a person reading the article will conclude that defendant must be responsible for the threats and would not make the threats unless defendant were guilty of the crime for which he is being tried. However, the contents of the article here were not as inflammatory or conclusively prejudicial as in *People v. Keegan* (1971), 52 Ill. 2d 147, 286 N.E.2d 345, *appeal dismissed* and *cert. denied* (1972), 406 U.S. 964, 32 L. Ed. 2d 663, 92 S. Ct. 2408. (*People v. Hryciuk.*) Both jurors stated that the article would not influence their decision, with the juror who had actually read the article expressing suspicion and disbelief as to the veracity and significance of the article. After considering the nature of the article and the *voir dire* of the jury, we do not believe that there was any prejudice to defendant, nor do we believe that defendant's right to a fair and impartial trial has been interfered with. Accordingly, we hold that the trial court did not err by denying defendant's motion for a mistrial. *People v. Lampson.*

Defendant next complains of the following instruction, given over his objection:

> "If you believe from the evidence, beyond a reasonable doubt that a crime was committed, and if you also believe beyond a reasonable doubt that the defendant, immediately after the commission of the crime with which he stands charged fled and remained away until taken into custody, such flight is a proper circumstance to be considered in determining the guilt or innocence of the defendant."

Defendant contends that there was no evidence to show flight on his part.

The concept of flight embodies more than simply leaving the scene of the crime. The accused must be attempting to avoid arrest or detection, actions which imply a consciousness of guilt. (*People v. Griffin* (3d Dist. 1974), 23 Ill. App. 3d 461, 318 N.E.2d 671.) However, flight is not a material element of proof, since it is at most an incriminating circumstance, and therefore it need not be proved beyond a reasonable doubt. *People v. Hurley* (2d Dist. 1968), 100 Ill. App. 2d 167, 241 N.E.2d 318.

The State's evidence showed that defendant fled the scene of the

shooting and was arrested in Chicago some three months later. By defendant's own testimony, he was in Joliet the day of the shooting, and he knew the police were looking for him at least two weeks before his arrest. There was thus some evidence of flight which the jury could properly consider. (See *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) When all of these facts are considered many Illinois cases have held that in some instances the flight instruction is harmless error because it is unnecessary proof. In *People v. Agnello*, 22 Ill. 2d 352, 176 N.E.2d 778 (1961), *cert. denied*, 368 U.S. 957, 7 L. Ed. 2d 389, 82 S. Ct. 400, the court held that proof of defendant's guilt was clear and in such a case, the jury would hardly need the circumstance of flight to be convinced of his guilt. In *People v. Haygood*, 60 Ill. App. 2d 70, 208 N.E.2d 373, the proposition was again recognized that even where the flight instruction should not have been given, where there is overwhelming evidence of the defendant's guilt, the instruction is not reversible error.

■■ In the instant case when all the testimony, including two unimpeached eyewitnesses, is viewed in a realistic manner the proof was clear cut and beyond question. Accordingly, we find no reversible error in the giving of this instruction.

Defendant's final contention is that the conviction for aggravated battery should be vacated because it arose out of the same conduct as the attempted murder. The State contends that the separate acts of shooting Miss Griffin first with a handgun and then with a shotgun gave rise to two distinct offenses.

The test of multiple offense sentencing is generally stated as whether defendant's conduct is separable or whether each offense is independently motivated. (*People v. Vaini* (3d Dist. 1975), 33 Ill. App. 3d 246, 337 N.E.2d 234; *People v. Bell* (3d Dist. 1975), 30 Ill. App. 3d 449, 332 N.E.2d 619.) If a series of separate, closely related acts give rise to distinct offenses requiring different elements of proof, multiple convictions are proper. (*People v. Moore* (1972), 51 Ill. 2d 79, 281 N.E.2d 294, *cert. denied* (1972), 409 U.S. 979, 34 L. Ed. 2d 242, 93 S. Ct. 331.) To say that this concept has been uniformly and easily applied in Illinois would be a gross misstatement.

■■ We do not believe that the offenses in this instance were independently motivated or sufficiently distinct to allow both convictions to stand. Each act was in furtherance of defendant's attempt to kill Miss Griffin, and both offenses arose from the same conduct. The State's position is belied by the fact that the language of the indictment charging defendant with attempt murder states that defendant "shot Marthaniel Griffin multiple times with a shotgun and a handgun * * *," whereas the indictment charging defendant with aggravated battery stated that defendant committed the offense by "shooting Marthaniel Griffin with a

shotgun * * *." (See *People v. Griffin* (1st Dist. 1973), 12 Ill. App. 3d 193, 297 N.E.2d 770.) Accordingly, the conviction for aggravated battery must be vacated, as it is the lesser of the two offenses. *People v. Guppy* (3d Dist. 1975), 30 Ill. App. 489, 333 N.E.2d 576.

The judgment of conviction of the Circuit Court of Will County is affirmed in part, and vacated in part.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

I do not agree with the view of the majority that the flight instruction was properly given.

It is fundamental that no instruction should be given which is not reasonably supported by the evidence, or which is not based on some theory logically deducible from some portion of the evidence. 14A Ill. L. & Pr. *Criminal Law*, §702 (1968).

In *People v. Craven*, 54 Ill. 2d 419, 299 N.E.2d 1, the principal case relied upon by the majority, the State's case-in-chief showed that the defendant ran from the scene of the crime after shooting the victim. The defendant testified in his own behalf that while he lay on the sidewalk, he heard a shot and someone urging him to "get out of here." Defendant also testified that he was frightened.

The Supreme Court of Illinois held that a flight instruction, similar to the one involved here, was properly given. The court stated that the jury could weigh against the circumstance of flight, if believed, the explanation of defendant that he was frightened and injured during the events and that he left the scene for those reasons. The court recognized that the Illinois Judicial Conference Committee on Pattern Jury Instructions in Criminal Cases had previously recommended that no instruction on flight be given. Nevertheless, the court pointed to its approval of substantially identical instructions in an earlier case, *People v. Burris*, 49 Ill. 2d 98, 273 N.E.2d 605. *Cf. People v. Barnes*, 2 Ill. App. 3d 461, 276 N.E.2d 509; *People v. Weller*, 123 Ill. App. 2d 421, 258 N.E.2d 806.

In *Burris*, the court held, without ruling on the propriety of giving a flight instruction, that such a charge could not have reasonably affected the verdict, under the circumstances there present.

In *People v. Herbert*, 361 Ill. 64, 196 N.E. 821, the Illinois Supreme Court commented on the giving of a similar flight instruction and found it to be reversible error because the evidence did not justify its being given. The court approved the following definition of flight in criminal law:

" '[T]he evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution

or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and purpose is that which gives to the act of leaving its real incriminating character.' " 361 Ill. 64, 73-74.

In *People v. Brown*, 3 Ill. App. 3d 1022, 279 N.E.2d 765, the court, relying on *Herbert*, held that the giving of a flight instruction constituted reversible error since the evidence did not warrant such an instruction. In *Brown*, the State knew and the trial court was aware from the testimony at pretrial motions that defendant continued to live at his home, worked at his regular occupation and voluntarily telephoned the police when he learned he was wanted for questioning. The court stated that, other than leaving the scene of the crime, there was no testimony that defendant concealed himself, fled the jurisdiction or evaded arrest.

In *People v. Zertuche*, 5 Ill. App. 3d 303, 282 N.E.2d 201, the court held that the giving of a flight instruction was error, and the court reversed the conviction. In *Zertuche*, there was a dispute in the evidence as to whether the defendant left the scene of the crime either running or walking. The court stated that on the basis of this evidence the instruction should not have been given because the concept of flight embodies more than just leaving the scene of the crime. The defendant must be attempting to avoid arrest or detention. See also *People v. Cox*, 74 Ill. App. 2d 342, 220 N.E.2d 7, where the evidence showed that the defendant fled during a car chase but the giving of a flight instruction was held reversible error, since the record did not show that the defendant knew or should have known he was a suspect, and therefore no showing of consciousness of guilt was made with respect to defendant's apparent act of flight.

In *People v. Weisberg*, 396 Ill. 412, 71 N.E.2d 671, *cert. denied*, 331 U.S. 826, 91 L. Ed. 1842, 67 S. Ct. 1318, the Illinois Supreme Court held that where the defendant has killed a man allegedly in self-defense and then leaves the scene of the shooting, going to a hotel in which he lives and enroute disposes of a weapon, there is not sufficient evidence to justify the giving of a flight instruction. The court stated that the most natural evidence of flight would be if the defendant were to go in a different direction than toward his home. The court rejected the People's contention that it is the duty of the defendant, whether guilty or innocent, to either remain upon the scene of the homicide or to surrender to a policeman. The court said that the instruction should not have been given, but held that it could not have reasonably affected the verdict, since any jury could distinguish between going home and fleeing to escape arrest.

In *People v. Johnson*, 75 Ill. App. 2d 231, 220 N.E.2d 261, the court, relying on *Weisberg*, held that the giving of a flight instruction was error because there was no evidentiary basis for the instruction. The evidence

disclosed that the defendant left the scene of the crime and was apprehended an hour to an hour and one-half later at his apartment. The court held that the giving of this instruction was not reversible error, since the case did not turn upon a close factual basis or upon the existence or nonexistence of flight.

In *People v. Haygood*, 60 Ill. App. 2d 70, 208 N.E.2d 373, the defendant was arrested in a tavern four and one-half weeks after the occurrence of the crime with which he was charged. The arresting officer testified that he went into the tavern after receiving information from a telephone call; when he approached the man who fitted defendant's description and asked for his name, he was given a name different than Haygood. The People contended that this evidence supplied a sufficient evidentiary basis for the giving of a flight instruction. The record disclosed that defendant had left the scene of the crime, but there was no evidence that he left in haste, that he went into hiding or that the police were searching for him and that he could not be found in his usual place of abode. The court distinguished *Herbert* on the basis of the overwhelming evidence of defendant's guilt and because of the fictititous name given by him when arrested. The court stated that the assumption of a fictitious name would be an indication of flight, since it discloses the intention to conceal one's identity and to evade arrest. But, said the court, since the instruction given was phrased in terms of flight, similar to the one used in the instant appeal, the evidence did not support such an instruction since it showed only the assumption of a fictitious name. Nevertheless, the court held the giving of the instruction harmless error because of the clear evidence of defendant's guilt.

Flight instructions have been approved where the defendant has left the jurisdiction under an assumed name (*People v. Ortega*, 5 Ill. 2d 79, 125 N.E.2d 481, *cert. denied*, 349 U.S. 967, 99 L. Ed. 1288, 75 S. Ct. 902), evaded capture (*People v. Bucnis*, 405 Ill. 568, 92 N.E.2d 158), left his home to reside with a friend (*People v. Keyes*, 117 Ill. App. 2d 471, 253 N.E.2d 539), or hid in a closet in another person's home (*People v. Lofton*, 64 Ill. App. 2d 238, 212 N.E.2d 705).

Where the defendant is running from pursuing police, the purpose is generally to evade arrest, and flight instructions have been approved on this basis. *People v. Agnello*, 22 Ill. 2d 352, 176 N.E.2d 788, *cert. denied*, 368 U.S. 957; *People v. Dukes*, 12 Ill. 2d 334, 146 N.E.2d 14; *People v. Hurley*, 100 Ill. App. 2d 167, 241 N.E.2d 318. *Hurley*, relied upon by the majority, is distinguishable since the instant appeal does not involve a defendant running from pursuing police.

Flight embodies two distinct kinds of conduct, namely, departure and concealment, both of which have been lumped together and treated alike. Evidence that the defendant has left the scene of a crime under a

consciousness of guilt may support the giving of a flight instruction, similar to the one given in the instant appeal. But, such an instruction should not be given when, for example, the evidence shows that the defendant has assumed a fictitious name. *People v. Haygood,* 60 Ill. App. 2d 70, 208 N.E.2d 373. Although the assumption of a fictitious name may disclose an intention to conceal one's identity for the purpose of evading arrest, it does not show that the defendant has fled immediately after the commission of the crime and remained away until taken into custody. Evidence of departure thus differs from evidence of concealment; appropriate instructions should be patterned to reflect this distinction.

Similar standards apply in determining whether the evidence supports the giving of a "flight" instruction. But, before such an instruction may be given, it must reflect the nature of the evidence of flight, whether departure or concealment.

Instructions not based on adequate evidence of flight may not be prejudicial if there is clear evidence of the defendant's guilt. *People v. Haygood,* 60 Ill. App. 2d 70, 208 N.E.2d 373, or if they reasonably could not have affected the verdict. *People v. Weisberg,* 396 Ill. 412, 71 N.E.2d 671, *cert. denied,* 331 U.S. 826, 91 L. Ed. 1842, 67 S. Ct. 1318. The evidence must support the giving of a flight instruction.

The evidence in the instant appeal discloses that the flight relates to the defendant's act of leaving the scene of the crime.

The following factors must be present in order to supply an evidentiary basis for a flight instruction based on the defendant's departure from the scene of the crime: (1) The defendant must leave the scene of the crime; (2) The defendant must know or have reason to know that a crime has been committed and that he is or may be suspected of committing that crime, *People v. Harris,* 23 Ill. 2d 270, 178 N.E.2d 291; *People v. Herbert* 361 Ill. 64, 196 N.E.821; *People v. Griffin,* 23 Ill. App. 3d 461, 318 N.E.2d 671; *People v. Cox,* 74 Ill. App. 2d 342, 220 N.E.2d 7; and (3) the defendant's act of departure must be for the purpose of evading arrest. *People v. Burris,* 49 Ill. 2d 98, 273 N.E.2d 605; *People v. Herbert,* 361 Ill. 64, 196 N.E. 821; *People v. Zertuche,* 5 Ill. App. 3d 303, 282 N.E.2d 201.

Once these factors are present, a flight instruction, based on the defendant's departure, may be given. From the evidence of flight, the jury may then infer consciousness of guilt and consider this circumstance in determining the guilt or innocence of the defendant.

The majority concedes that the concept of flight embodies more than simply leaving the scene of the crime. Yet, the evidence shows no more than that. The evidence does not show that defendant's act of leaving the scene was done for the purpose of evading arrest. Apparently, the majority attempts to bridge this gap by pointing to the evidence that defendant knew the police were looking for him at least two weeks

before his arrest. But the majority does not connect the defendant's knowledge with his departure from the scene—a connection necessary in order to establish that the flight was for the purpose of evading arrest. In fact, the record discloses that the defendant did not know the police were looking for him until more than two months after he left the scene of the crime. Under these circumstances, I believe the defendant's knowledge cannot be considered in conjunction with his departure from the scene, in order to reasonably justify the inference that his purpose was to evade arrest. A flight instruction would have been properly given if the defendant had learned he was a suspect for this crime either during or immediately after its commission, or while engaged in departing from the scene. Here, the connection is much too remote to permit the jury to infer consciousness of guilt.

It is well-settled in Illinois that evidence of flight can be used to infer guilt. Nevertheless, the weakness of such an inference has long been pointed out. As early as 1896, in *Alberty v. United States*, 162 U.S. 499, 511, 40 L. Ed. 1051, 1056, 16 S. Ct. 864, the United States Supreme Court stated:

> " [I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth; but the righteous are bold as a lion.' Innocent men sometimes hesitate to confront a jury,—not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves. * * *"

The weakness of the inference raised by evidence of flight requires that trial judges should be reluctant to give such an instruction unless the evidence provides a sufficient basis.

Departure from the scene after a crime has been committed, of itself, does not warrant an inference of guilt. For departure to take on the legal significance of flight, there must be circumstances present and unexplained which, in conjunction with the leaving, reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt. *State v. Sullivan*, 43 N.J. 209, 203 A.2d 177, *cert. denied*, 382 U.S. 990, 15 L. Ed. 2d 477, 86 S. Ct. 564.

Although I believe the instruction was error, I concur with the majority that it was harmless error, and the cause does not require reversal for a new trial.