THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JERRY W. KLEISS, Defendant-Appellant.

Third District   No. 79-228

Opinion filed September 8, 1980.

BARRY, J., dissenting.

Robert Agostinelli and Tom Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:
Following a jury trial, defendant Jerry Kleiss was convicted of three

counts of theft of property valued over $150 and was sentenced to three concurrent 5-year terms of imprisonment. He appeals, contending that he was denied a fair trial because of a radio broadcast aired during the trial, and that, in imposing sentence, the trial court erroneously found certain factors in aggravation.

The trial was conducted on March 5 and 6, 1979. During the *voir dire* of jurors, the trial judge admonished them to consider only the evidence offered in the courtroom and not anything else in arriving at their verdict.

The State's evidence established that in late September and early October of 1978, tools were stolen from sheds on three different farms in the same area of McDonough County. In each case the value of the tools exceeded $150.

McDonough County Sheriff John Bliven testified for the State that he interviewed defendant at the Hancock County jail on October 20, 1978. At the beginning of the interview, defendant was read his *Miranda* rights and signed a form waiving them. When the witness was asked about the content of defendant's statements, the defense objected. The jury was removed from the courtroom, and the defense requested and was granted a hearing outside the jury's presence on the previously filed motion to suppress.

In the hearing defendant testified that he was taken into custody by the Hancock County sheriff's office around 12:30 a.m. on October 20, 1978. He was questioned by Hancock County authorities during the early morning hours about matters unrelated to the instant case and eventually signed a written statement. Defendant testified that during this time he made numerous requests for an attorney which were not honored. When he tried to terminate the questioning, he was grabbed by the throat and slapped around by Deputy Bill Farrell. At about 6 a.m. defendant was taken to a cell in the Hancock County jail.

He was interviewed by McDonough County Sheriff Bliven later that day in the afternoon. According to defendant, from the time he was taken into custody until his interview with Bliven, he had no food or rest. Prior to Bliven's arrival at the jail, defendant was told by Hancock County authorities not to request an attorney under threat of more beatings. Defendant acknowledged that at his interview with Bliven, he signed a waiver of his *Miranda* rights. Because of pressure from the Hancock County authorities, he confessed to the three thefts although he had not committed them. A written statement was taken in the form of questions by Bliven and answers by defendant. Defendant acknowledged that it set forth his answers with substantial accuracy.

After defendant testified, the judge continued the hearing until the next day. He asked the representatives of the news media, including radio station WKAI, not to report defendant's testimony at the sup-

pression hearing in detail because a mistrial could possibly result. The jury was permitted to separate until the following day, and court was adjourned.

The next morning prior to trial WKAI broadcast a news item about the trial. The broadcast stated that the jury had been removed from the courtroom so that testimony on defendant's motion to suppress could be presented and that defense counsel argued that a confession defendant made to Bliven while in custody in Hancock County was inadmissible because it was not voluntarily made. The broadcast continued:

"On the witness stand Kliess [sic] told the court he'd been 'slapped around' by Hancock County authorities during questioning.

Kliess [sic] also stated he'd been denied any food or rest during the 15-hours he spent in custody before McDonough County Sheriff John Bliven and Deputy Jack Thurman questioned him regarding the tool thefts in McDonough County. Further * * * Kliess [sic] said Hancock officials refused to let him contact an attorney. Hancock County officers last night denied the charges made by Kliess [sic].

Under [the prosecutor's] cross-examination Kliess [sic] stated he was never touched on [sic] in any way threatened by McDonough County officials * * * that he was given his so-called 'Miranda rights' * * * that he did not ask to speak with an attorney during questioning by McDonough County officials * * * and that the statement he gave Sheriff Bliven was substantially accurate.

There appears to be a question as to whether the alleged threats made toward Kliess [sic] by Hancock officials affected his responses in dealing with the McDonough County officials."

The broadcast concluded by stating that because the attorneys were unable to cite any cases supporting their positions, the hearing was continued.

At 10 a.m. the suppression hearing was resumed. Farrell testified for the State, denying that he struck, grabbed or threatened defendant during the interrogation in the early morning hours of October 20. He said defendant was fed and, after the interrogation by Hancock County police, was given a mattress and blankets to sleep. Farrell said defendant did not request an attorney. He denied telling defendant not to ask the McDonough County authorities for an attorney. Hancock County Sheriff Dick Yeager gave testimony corroborating Farrell.

The motion to suppress was denied, and the jury was returned to the courtroom. The judge stated he had been advised of a radio broadcast about what had occurred outside the jury's presence. Five jurors indicated they had heard the broadcast, but two of the five could not

remember any of the facts. Three jurors remembered the contents of the broadcast, and one stated that suppression of the confession was involved. Each of the three said he could disregard the broadcast and consider only the evidence offered in court. All five said they could still be fair. The defense then moved for a mistrial outside the jury's presence, and the motion was denied.

The trial resumed, and Bliven, taking the stand, read defendant's written confession in which he stated that in each of the three cases he stole the tools and took them to the nearest road where his brother was waiting in a car. The tools were taken to Kansas City and sold.

The defense presented no evidence. The jury was instructed and retired to deliberate. One of the instructions provided, in part:

"It is your duty to determine the facts, and to determine them only from the evidence in this case. * * *
* * *

From time to time it has been the duty of the court to rule on the admissibility of evidence. You must not concern yourselves with the reasons for these rulings."

Following defendant's conviction, a presentence report was prepared which set forth the following criminal record:

"*1972*, Clark Co., Mo., larceny of television set and, Lee Co., Ia., larceny of motor vehicle, ten years Anamosa, paroled in 1974; *1975*, Lee Co., Ia., injury to a motor vehicle, returned to Anamosa for one year and paroled in 1975; *1975*, Cedar Rapids, Ia., parole violation (theft), returned to Anamosa for one year; *1978*, Hancock County, Illinois; theft, over $150.00, pending."

At the sentencing hearing the defense represented to the court that the 1972 conviction of larceny of a motor vehicle was set aside in 1977, and that the two 1975 entries concerned the same incident. The court then sentenced defendant to three concurrent 5-year terms of imprisonment, finding, *inter alia*, the following factors in aggravation listed in section 5—5—3.2 of the Unified Code of Corrections:

"(2) the defendant received compensation for committing the offense; [and]

(3) the defendant has a history of prior delinquency or criminal activity." Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.

■■ Defendant's first contention is that he was denied a fair jury trial because of the radio broadcast. He acknowledges that the crucial question in a case involving publicity during trial is whether any juror has been influenced or prejudiced to the extent he cannot be fair. (*People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61.) The granting of a mistrial due to prejudicial publicity is a matter within the sound discretion of the trial court, but an abuse of that discretion will result in reversal. (*Hryciuk*;

*People v. Henderson* (1976), 39 Ill. App. 3d 502, 348 N.E.2d 854, *appeal denied* (1976), 63 Ill. 2d 560.) The question should be resolved by a consideration of all the attendant circumstances, the most important of which are the character and nature of the publicity. (*Hryciuk.*) Upon proper requests by the defense, the trial judge must take adequate steps to protect the defendant from the prejudicial effect of publicity. *People v. Cain* (1967), 36 Ill. 2d 589, 224 N.E.2d 786.

■■ Defendant argues that the radio broadcast was so inherently prejudicial that a mistrial should have been declared notwithstanding the jurors' assurances that they could disregard it and consider only the evidence offered in court. He maintains that because the broadcast stated the defense had argued the confession was inadmissible because it was not voluntarily made, and because the trial judge ultimately admitted the confession into evidence, the jurors who remembered the broadcast would have been unable to make an independent evaluation of the evidentiary weight of the confession. Since the broadcast summarized defendant's testimony at the suppression hearing, the defense argues, when the confession was admitted, defendant would have been discredited in the eyes of the jurors who heard the broadcast. The defense also argues the broadcast would cause suspicion about defendant in the minds of the tainted jurors who knew he testified at the suppression hearing, but not at trial. Finally, defendant argues the trial judge took inadequate steps to protect him from the possibility of prejudice.

We find these arguments unpersuasive. The major fallacy of defendant's position is that the broadcast did not state why the motion to suppress was denied. The jurors heard nothing about that part of the suppression hearing conducted on the second day of trial. By way of contrast, see *State v. Bowden* (1960), 62 N.J. Super. 339, 361, 162 A.2d 911, 922, where newspaper reports, read by some of the jurors, quoted the trial judge as saying the defendants were "not telling the truth" at the suppression hearing. In the instant case the jury was not informed that the trial judge disbelieved defendant's testimony. Under these circumstances, the potential for prejudice was insubstantial. All that the jurors knew was that defendant unsuccessfully sought to exclude evidence of his confession. In light of the jurors' unequivocal statements that they could disregard the broadcast and consider only the evidence offered in court, it cannot be said that the refusal to declare a mistrial was an abuse of discretion.

Furthermore, we believe the trial judge took adequate steps to prevent the possibility of prejudice. He admonished the jurors repeatedly to consider only the evidence offered in court. He instructed them not to concern themselves with the reasons for his rulings concerning the admissibility of evidence. He also instructed them not to consider the fact

that defendant did not testify. His examination of the jurors, unlike that in *Cain,* was not designed to elicit responses showing a lack of prejudice. While it is true that the jurors were not examined individually, outside the presence of the others, such a procedure is not necessarily required. (*People v. Brinn* (1965), 32 Ill. 2d 232, 204 N.E.2d 724, *cert. denied sub nom. Clements v. Illinois* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62.) Considering the nature of the publicity and the statements of the jurors, the trial judge's response was adequate.

■■ Defendant next argues that the trial judge erred in finding as an aggravating factor that he received compensation for committing the offense. According to defendant, that factor is present only if the offender is paid by another person to commit the crime. That very argument was rejected in *People v. Conover* (1980), 83 Ill. App. 3d 87, 403 N.E.2d 708. We adhere to that decision and can perceive no meaningful difference between a thief who is paid to commit the offense and one who is self-employed.

Defendant's final argument is that the trial court erred in finding as an aggravating factor that he had a history of prior delinquency or criminal activity. He argues that such a finding shows that his sentence was the product of improper considerations. He filed a motion, which was taken with the case, for this court to take judicial notice of the order of an Iowa court setting aside his 1972 conviction for larceny of a motor vehicle.

■■ Suffice it to say that there is a presumption that the trial judge was not influenced by factors which may not properly be considered in sentencing, but rather considered only the other competent evidence. (*People v. Gustafson* (1979), 75 Ill. App. 3d 497, 393 N.E.2d 1315.) In the instant case the trial judge was informed at the sentencing hearing that the conviction had been set aside. The other conviction listed in the presentence report (larceny of a television set in 1972), which defendant concedes could properly be considered, supports the finding of the aggravating factor. Moreover, the sentences are clearly not excessive.

For the reasons stated above, the convictions and sentences entered by the Circuit Court of McDonough County are affirmed.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE BARRY, dissenting:

I respectfully dissent from the majority opinion. I disagree with the reliance on *People v. Conover* (1980), 83 Ill. App. 3d 87, 403 N.E.2d 708, and the theory that compensation for committing the crime includes the

proceeds or tangible profit that may come as a natural consequence of the criminal act charged, *i.e.*, theft. In my opinion the dissent of Justice Stouder in *Conover* is the better reasoned approach to the issue of what the legislature intended by use of the words "compensation for committing the offense" as an aggravating factor in sentencing. I agree with Justice Stouder's statement "[i]t seems to me this phrase refers to the commission of an offense for hire only and does not refer to the value of proceeds from an offense." (83 Ill. App. 3d 87, 89, 403 N.E.2d 708, 710.) I also agree with Justice Stouder that substituting the synonym "payment" for "compensation" properly suggests the true intent of the legislature, that an offense committed pursuant to some kind of an agreement or contract is an aggravating factor, justifying a more severe sentence.

To extend the position of the majority to its most illogical extreme, the case of a criminal act which does not naturally result in monetary reward or in a tangible profit to the perpetrator should be considered. Rape, as an example, will illustrate the point. The criminal act of rape may and does in most instances naturally result in intangible reward or in some form of physical or emotional satisfaction for the perpetrator. In a sense he also has been compensated by the majority's view, in an intangible sense, as a natural result of the criminal act. I doubt the majority would attempt to extend the term "compensation" to the intangible reward in that case. Yet in the case of a theft or burglary, where the natural consequence of that act may result in·a gain of material possessions by the perpetrator, the majority attempts to equate that gain or tangible profit with compensation or payment for that crime.

I submit the illogical result when comparing the crime of rape with a theft clearly points to the error in the majority's position. Obviously the legislature did not intend such a result, but rather intended to recognize that it can be an aggravating factor in sentencing for the crime whenever compensation is paid by another for the commission of the crime or it is done for hire.