**People of the State of Illinois, Plaintiff-Appellee,
v. James Graham, Defendant-Appellant.**

**Gen. No. 53,780.**

First District, Third Division.

July 16, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of Chicago and John E. Knight, of Oak Park, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Donald Novelle, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, James Graham, was indicted for murder. After a bench trial, he was found guilty of that charge and sentenced to the penitentiary for a term of 15 to

16 years. He appeals, contending that he was not proved guilty beyond a reasonable doubt. The facts as brought out at trial are as follows.

Irving Tomlinson, a laundry truck driver, testified for the State that on August 14, 1967, at about 7:15 a. m. he was making a laundry pickup in the vicinity of 6220 South Woodlawn, Chicago. He had just pulled up in his truck when he heard defendant and a young lady getting out of a car. Defendant got out on the driver's side and was standing on the street. The young lady was screaming "Don't do it, don't do it." Defendant had a rifle in his hand, and both he and the girl were walking toward the entrance of the building at 6220 Woodlawn when the deceased emerged. Deceased was carrying a package wrapped in brown paper with a white string around it. The package was about the size of a lunch bag, about a foot long and six inches wide. Deceased did not try to take anything out of the package, and it had no recognizable shape. Defendant, carrying the rifle, started to chase deceased, who was trying to run from the gun, and was crouching down behind parked cars. Defendant jumped on the roof of a parked car. At that time he was holding the rifle about three feet from the deceased, who tried to reach for it. Defendant fired one shot and deceased fell. Defendant was unable to get his car to start, and walked away.

On cross-examination, Tomlinson testified that the deceased had not come out of the building when the lady was screaming not to do it. Deceased was carrying the package like a lunch. He was not holding the package by the end, and was not trying to swing it. No conversation took place between deceased and defendant.

The trial judge then asked Tomlinson several questions. The judge asked who the young lady was talking to when she screamed not to do it, and the witness replied that she was talking to defendant. The judge

asked what caused defendant to jump on the car, and the witness answered that he imagined to get a better shot at the deceased. The judge asked whether defendant jumped on the car to avoid attacks by deceased, and whether deceased was chasing defendant. Tomlinson replied no to both questions.

Officer John Scott of the Chicago Police Department testified for the State that he arrested defendant on the date of the slaying. As he and his partner approached defendant, whose right arm was in a cast, the latter stated that he was the man they wanted. Defendant took the police to where he had hidden the gun, a Luger 44-calibre magnum. Defendant had 8 or 9 magnum bullets on his person at the time of the arrest. Officer Scott saw a hatchet at the police station. The hatchet was in a case, and there was also a brown bag.

It was stipulated that if two other police officers were called to testify, they would testify that they arrived at the scene shortly after the occurrence, and that they found an ax, sheathed and in a brown bag, lying near the body of the deceased.

Defendant testified on his own behalf that on August 11, 1967, he went to visit Vernita Almory, a friend who lived at the Woodlawn address. She owed him money. As defendant was getting out of his car, he saw her and deceased entering the building, and he called her over to talk to her. Deceased walked over to the car and threatened to kill defendant if he came there again. Deceased then went upstairs and a few minutes later came down with a hatchet and chased defendant. Defendant went home, called the police, but was told that he would have to go to court to get a warrant for the arrest of deceased. Three days later, on the date of the occurrence, Miss Almory called defendant and asked him to come over. Defendant brought his rifle with him. When he arrived she was waiting outside for him and entered his car. As they left the car to buy cigarettes,

276

deceased came outside with a hatchet in his hand. The girl screamed at deceased not to do it, and defendant ran back to the car to get his rifle. Deceased started to chase him so he jumped on a car roof, repeatedly asking deceased to stop. Deceased was swinging the hatchet at him, so defendant whose right arm was in a cast, shot him in the arm. He was not trying to kill deceased, but was trying to protect himself. There was a paper bag around the handle of the hatchet, but the blade was exposed, and defendant could see it shining.

On appeal, defendant contends that under all of the evidence, including his own testimony that he was acting in self-defense, the State failed to prove him guilty of murder beyond a reasonable doubt.

■ ■ Defendant's testimony as to the occurrence was contradictory in many respects to the evidence offered by the State. Consequently, the credibility of the witnesses became the determinative issue. The credibility of the witnesses is for the trial court to decide, with its superior opportunity to observe their manner and demeanor, and that determination generally will not be disturbed on review. People v. Pendleton, 75 Ill App 2d 314, 221 NE2d 112 (1966). And it is not the province of this court to substitute its judgment for that of the trier of fact merely because the evidence is conflicting. The People v. Novotny, 41 Ill2d 401, 244 NE2d 182 (1968).

■ The trial court resolved conflicts in the testimony between Tomlinson and defendant in favor of the State, and we see no reason to disturb that determination by the trial court. Tomlinson, a stranger to the parties, gave testimony which was clear and convincing. His testimony was also corroborated by the testimony of the police officers. If believed, as it was by the trier of fact, the evidence offered by Tomlinson was sufficient to prove defendant guilty of murder beyond a reasonable doubt. Tomlinson's testimony was to the effect

that defendant, despite pleas by a young lady, shot and killed a man who was trying to escape from defendant by hiding behind parked automobiles. He further testified that, while deceased was carrying a brown bag, he did not brandish it or attempt to use it as a weapon. That evidence was supported by the testimony of the police officers that at the scene they found a sheathed ax wrapped in a brown paper bag near the body of deceased. The officers' testimony not only corroborated that given by Tomlinson, but also impeached defendant's testimony that deceased was swinging a hatchet and chasing him. Additionally that evidence supported the trial court's rejection of defendant's claim that he acted in self-defense. Nor would defendant's testimony that deceased had attacked him with a hatchet three days earlier, even if believed by the trial court, justify the subsequent slaying.

 Defendant maintains that Tomlinson witnessed only the latter part of the occurrence, and that he was confused as to what actually had occurred. However, an examination of the record reveals that not only did Tomlinson view the entire occurrence, but that he was an observant and impartial witness. Defendant also contends that the fact that he climbed on the roof of an automobile indicated that he was trying to avoid the deceased, since his rifle was so powerful that he could have shot deceased as he emerged from the building, or even through the obstruction of an automobile. The argument overlooks the testimony of Tomlinson that the deceased took evasive action as soon as he came out of the building. It also ignores the fact that defendant's arm was in a cast, and he necessarily would have to get close to deceased in order to shoot him. We find no merit in defendant's additional argument that the fact that he fired only one shot was corroborative of his claim that he was not the aggressor. In this respect,

we would note that the trial court was not required to search out a series of possible explanations compatible with innocence, and then elevate them to the status of reasonable doubt. People v. Jackson, 98 Ill App2d 296, 240 NE2d 482 (1968).

■ ■ Defendant also urges that the failure of State to call Vernita Almory as a witness on its behalf created an inference that her testimony would have been adverse to the State. However in People v. Jones, 30 Ill2d 186, 195 NE2d 698 (1964), the court held that the failure by the State to call every witness to a crime does not give rise to a presumption in defendant's favor. As we have noted, Tomlinson's testimony was complete in all respects, and it was not incumbent upon the State to call as a witness defendant's friend, Vernita Almory. The case, People v. DiVito, 66 Ill App2d 282, 214 NE2d 320 (1966), cited by defendant for the proposition that an adverse inference is created by the State's failure to call a witness, is distinguishable from the instant case. In that case, the victim was unable to identify the accused as one of the robbers, and the accused's connection with the crime was based on a fingerprint. Thus the court held that failure to call an eyewitness to the crime created an adverse inference against the State. No such facts exist in the case at bar.

■ Finally, under the heading that he was not proved guilty beyond a reasonable doubt, defendant argues that the trial court was deflected from a finding of not guilty by certain answers given by Tomlinson in response to questions propounded by the trial judge. While a few of the questions were leading and certain answers constituted conclusions, it should first be noted that defense counsel made no objection to the questions or answers. Moreover, defendant suffered no prejudice as the result of the brief interrogation by the trial judge, nor could the latter have been misled by the responses

279

of Tomlinson. All of the answers given by Tomlinson to the judge's questions had been fully substantiated by previous competent testimony he had given.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.