THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ASHWARD WENDELL GATES, Defendant-Appellant.

First District (4th Division)    No. 61182

Opinion filed March 24, 1977.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and John Feely, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Ashward Gates, defendant, was charged by indictment with three counts of armed robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) Following a bench trial but before judgment, two counts of the indictment were dismissed on motion of the State. Defendant was found guilty of one count, the armed robbery of Willie Brooks, and was sentenced to serve four to twelve years in the penitentiary. Defendant's co-indictee, Jimmy Harris, was tried separately. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of the armed robbery of Willie Brooks.

We affirm the decision of the trial court.

## THE STATE'S CASE

Willie Brooks testified that at 8 p.m., on January 2, 1973, he went into the Shamrock Tavern at 5252 S. Halsted Street, in Chicago. Several hours later he was to begin his night shift as a security guard at a building two

doors away. At about 11 p.m. he went into the washroom at the tavern. When he came out, he saw the tavern customers lying on the floor and he observed a man, later identified as Jimmy Harris, standing near the bar holding a gun. Harris ordered him to lie down on the floor. He related that as he obeyed the order, he attempted to rearrange two packs of cigarettes that were in his shirt pocket.

Brooks stated that at that moment, another man, whom he later identified as defendant, asked him what he was doing and then began to search him. Defendant removed a .22-caliber revolver and a blackjack from Brooks' pockets. After the defendant seized the two items he said, "I should blow your damn brains out."

Brooks further testified that he then saw Harris leading the tavern owner out of the back room. Harris then ordered the bartender to give him the money in the cash register. After the bartender complied, defendant and Harris backed out of the tavern, with defendant pointing a gun at the bartender.

Brooks asserted that the tavern was equipped with an alarm system which had been triggered during the robbery, and that when defendant and Harris backed out of the door, the police were waiting. On seeing the police apprehend the two men, Brooks went outside and informed the police that defendant had his gun.

On cross-examination, Brooks testified that the first time he saw defendant was when defendant searched him. Brooks also stated that he did not look up between the time defendant threatened to blow his brains out and when defendant and Harris left the tavern.

Brooks further stated that there were approximately 15 people in the tavern at the time of the robbery. He did not recall that at the preliminary hearing he testified that there were no other customers present during the robbery. Brooks did acknowledge stating at the preliminary hearing that only a gun was taken from him, while at trial he indicated that a blackjack also had been taken.

Chicago Police Officer Joseph Kwiatowski testified that at approximately 11 p.m. on January 2, 1973, he was alerted of a "robbery in progress" and immediately proceeded to 5252 S. Halsted. Upon arrival, he observed two men leaving the Shamrock Tavern. The men separated and proceeded down different sides of the street. Kwiatowski then placed defendant under arrest, who then told him that "I didn't know that this guy was going to stick the place up at that time." Kwiatowski's partner apprehended Harris and took him into custody. At this point, Brooks and a tavern customer came out of the tavern. Kwiatowski searched the defendant and recovered a .22-caliber revolver and a blackjack. These items were identified by Brooks as belonging to him.

Kwiatowski subsequently took defendant to the police station and

advised defendant of his rights. Defendant told him that Harris had said to him earlier that evening, "Let's go out and get some 'bread' tonight." Defendant also stated that he had not wanted to go along but then changed his mind. At the time they entered the tavern, defendant thought they were merely going to purchase some liquor.

Chicago Police Officer Carl Malik testified that on the night of the incident he took an oral statement from defendant who told him that the gun that was recovered belonged to the security guard at the tavern.

## DEFENDANT'S CASE

Defendant testified on his own behalf that he had known Harris for approximately six months. The first time he saw Harris on the night of the robbery was at approximately 9:30 p.m., at a bar at 56th and Halsted. They left together at about 10:30 p.m. and aent to the Shamrock Tavern to purchase packaged liquor. When they went into the tavern, defendant said he saw Brooks sitting at the bar. Defendant stated that Harris ordered liquor and beer. Harris then took out a gun and announced a robbery and ordered everyone to lay down on the floor. Defendant stated that he did not know Harris had a gun until this time. Defendant told Harris that he was out of his mind and began to leave the tavern. As defendant was leaving, he noticed a pistol and a blackjack fall out of Brooks' pocket when Brooks got off the bar stool. Defendant picked up the weapons but claimed he had no conversation with Brooks and never threatened him. Defendant asserted that he put Brooks' gun in his pocket and did not point it at anyone. Defendant explained that he took the gun for fear of being shot by Brooks since it might be incorrectly assumed that he was engaged in the robbery with Harris.

On cross-examination, defendant denied that he had ever told Officer Kwiatowski that he and Harris had discussed a robbery earlier that evening. He also stated that as he was leaving the tavern he observed the gun fall from Brooks' pocket, and again asserted he picked up the gun only to avoid being shot by Brooks. He denied backing out of the tavern door and stated that he walked out face first. He denied pointing a pistol at anyone.

After closing arguments, the trial judge rejected defendant's defenses of compulsion, lack of accountability, and self-defense and found him guilty of the armed robbery of Willie Brooks.

## OPINION

Defendant offers three explanations of his conduct on the night of January 2, 1973, that, he contends, compels us to reverse the finding of the trial court. First, defendant maintains that by virtue of the apparent deadly force available to Harris to harm him, if he failed to obey,

defendant was acting under compulsion to whatever extent he participated in the armed robbery at the Shamrock Tavern. (Ill. Rev. Stat. 1971, ch. 38, par. 7—11(a).) Second, defendant maintains that, at most, he was merely present while Harris committed the armed robbery at the tavern, and thus he cannot be held accountable for the actions of Harris. (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c).) Third, defendant contends that he merely took the gun away from Brooks while acting under the reasonable apprehension of being shot by Brooks, who might have mistakenly assumed he was a participant in the robbery, and thus he was acting in self-defense. Ill. Rev. Stat. 1971, ch. 38, par. 7—1.

Section 7—11(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 7—11(a)) defines the defense of compulsion as follows:

"A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct."

■■ Compulsion is an affirmative defense (Ill. Rev. Stat. 1971, ch. 38, par. 7—14) requiring a defendant to put forward at trial some evidence in support of his contention. (Ill. Rev. Stat. 1971, ch. 38, par. 3—2(a); *People v. Adcock* (1975), 29 Ill. App. 3d 917, 331 N.E.2d 573.) Once such evidence has been presented it is then incumbent upon the State to prove, beyond a reasonable doubt, that defendant was not acting under compulsion. Ill. Rev. Stat. 1971, ch. 38, par. 3—2(b); *People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328.

■■ In the instant case, defendant offered no evidence to support a defense of compulsion. While it was proved that Harris was brandishing a weapon, there was no evidence offered to warrant the conclusion that Harris intended to use the weapon against defendant. In his own testimony, defendant claimed that he began to leave the tavern when Harris announced a robbery. The record is devoid of any evidence of affirmative action by Harris compelling defendant to be a participant in the crime. We thus conclude that defendant's claim of compulsion must fail for lack of proof.

As his second contention, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of the armed robbery of Brooks, since he could not be held accountable for Harris' actions.

Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c)) prescribes that a party's accountability for a crime exists when:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits,

aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. * * *"

■■ In *People v. Washington* (1962), 26 Ill. 2d 207, 209, 186 N.E.2d 259, 261, our supreme court stated:

"While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime. [Citations.]"

Whether defendant was merely present as an innocent bystander during the commission of the crime or whether he lent his "countenance and approval" to it, is resolved in part by what degree of credibility the trial court gives to the witnesses who testified. The issue of the witnesses' credibility and what weight to give their testimony is a matter within the province of the trial judge when sitting without a jury. It is only when the trial court's finding is contrary to the manifest weight of the evidence that the reviewing court will set it aside. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

■■ In the instant case, defendant testified to the effect that he had no prior knowledge that Harris was armed or was going to commit an armed robbery. Further, once he saw the nature of Harris' conduct, he did all he could to leave the scene. At most, he suggests, he was an unwitting bystander caught up in circumstances beyond his control. However, we find that the trial judge could properly have chosen to believe the testimony of the State's witnesses, which necessarily led to the conclusion that defendant was an active participant in the crime.

■■ Further, we observe that the testimony of but a single witness, if credible, is sufficient to support a conviction, even though the testimony is contradicted by the accused. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) We find that the testimony of Brooks alone would have been sufficient to sustain the finding of defendant's guilt beyond a reasonable doubt. Brooks was consistent throughout his testimony. There is no question raised regarding Brooks' identification of defendant or his testimony that defendant took his gun and blackjack. In addition, Brooks testified to the threat made by defendant at a time when defendant was standing in close proximity to him. In contrast, defendant's testimony, though consistent, was self-serving and totally uncorroborated. We note further that even if the robbery itself was a spontaneous, unplanned act,

this would not necessarily be a defense where, as here, the evidence indicated that defendant involved himself in the robbery. *People v. Irons* (1976), 39 Ill. App. 3d 993, 350 N.E.2d 754.

■■ Defendant's contention that he acted in self-defense must also fail. In raising this affirmative defense, defendant has the burden of presenting, at trial, some evidence showing that his actions were motivated by a reasonable apprehension of great bodily harm. (See *People v. Harling* (1975), 29 Ill. App. 3d 1053, 331 N.E.2d 653.) Here, the evidence indicated that Brooks was in possession of a deadly weapon. Thus, defendant asserts that his sole motivation for taking the gun away from Brooks was out of fear of being shot by Brooks. Defendant further argues that his fear was reasonable under the circumstances. (See Ill. Rev. Stat. 1971, ch. 38, par. 7—1.) However, a claim of self-defense is not available to one who participates in the commission of a forcible felony. (Ill. Rev. Stat. 1971, ch. 38, par. 7—4(a).) Since we agree with the trial court that defendant was accountable for the commission of the armed robbery, the self-defense claim is unavailable.

■■ As his last contention, defendant calls attention to the fact that none of the tavern customers other than Brooks was called to testify, and as a consequence the failure to produce such witnesses raises an inference that their testimony would have been damaging to the State's case. However, in *People v. Jones* (1964), 30 Ill. 2d 186, 190, 195 N.E.2d 698, 700, the court stated that "[t]he State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution." (Accord, *People v. Graham* (1970), 127 Ill. App. 2d 272, 262 N.E.2d 243.) We believe the record clearly indicates ample reasons for the trial court's decision, despite the fact that all available witnesses were not called to testify.

We acknowledge defendant's right to assert and claim whatever defenses are legally available to him. Here, however, we find the judgment of conviction is sustained by credible evidence that removes all reasonable doubt of defendant's guilt.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

DIERINGER, P. J., and JOHNSON, J., concur.