2021 IL App (1st) 180884-U

No. 1-18-0884

Order filed January 26, 2021.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 19771 |
| | ) | |
| JOHN SMITH, | ) | The Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for armed robbery, concluding that his trial counsel was not ineffective for failing to investigate and present the affirmative defense of self-defense.

¶ 2    Following a bench trial, defendant John Smith was found guilty of five counts of armed robbery (720 ILCS 5/18-2(a)(2), (3), (4) (West 2012)), and not guilty of five counts of attempt first degree murder. The trial court merged the armed robbery counts and sentenced defendant to a

mandatory term of life imprisonment based on his criminal history. Defendant appeals, arguing his trial counsel was ineffective for failing to investigate and present the affirmative defense of self-defense based on an unreasonable assessment of the case. We affirm.

¶ 3    The State charged defendant and codefendant, Kelvin Christopher, with five counts of attempt first degree murder, one count of aggravated battery with a firearm, and five counts of armed robbery.[1] The State alleged that, on October 2, 2012, defendant and Christopher shot the victim, Ian Zarco, causing great bodily harm to Zarco, and took from him a backpack.

¶ 4    At trial, Zarco testified that, in October 2012, he was a full-time student who also sold marijuana. Around 1:30 p.m. on October 2, 2012, he planned to meet a mutual friend named Frank near a pizza parlor at Pulaski Road and Barry Avenue and sell to Frank two pounds of marijuana for $8000. Before Zarco arrived, Frank called and told him he could not make it and that he was sending one of his friends, who Frank did not name but described as an older black man.

¶ 5    Zarco arrived at the pizza parlor and saw defendant. Zarco approached defendant, carrying his backpack, which contained two pounds of marijuana, and the two men "verbally confirmed that [they] were the people that were supposed to meet."

¶ 6    The two men walked to the alley west of Pulaski, between Barry and Nelson Street "where it was less populated" to complete the transaction. The two made small talk while walking and, once in the alley, defendant pulled out a silver pistol with his right hand and put it in Zarco's stomach, interrupting him midsentence. Zarco turned his body toward the right and tried to push the pistol away from him but defendant shot Zarco in the stomach, causing him to fall to the

---

[1]Christopher is not a party to this appeal.

ground. Defendant bent down and picked something up from the ground, which Zarco believed to be shell casings.

¶ 7    While defendant was bent over, Zarco felt someone tugging on his backpack, which he was wearing on his back. Zarco did not see the second person in the alley when he and defendant entered. Zarco kept his arms down to prevent the person from taking the backpack but when defendant came to aid whoever was pulling the backpack, Zarco relinquished it because he did not want to get shot again. Defendant and the other "party in his company" took the backpack. After a woman stuck her head out of a window and yelled something, defendant and the other person ran away.

¶ 8    An ambulance arrived and transported Zarco to the hospital, where he had surgery and was placed into a medically induced coma for three to four weeks. He did not speak to police immediately after waking from his coma because he was "heavily medicated," and it was not until five to six weeks after the incident that he met with police and identified defendant as the person who shot him. Zarco was never able to identify the second person in the alley.

¶ 9    On cross-examination, Zarco testified he was not armed. When asked whether it was true that he pulled out a gun to rob defendant and defendant turned the gun back on him, Zarco answered, "No." Zarco also testified he told defendant the marijuana was on his person.

¶ 10    The State also presented the testimony of three witnesses, Crystal Ortiz, Aide Gordillo, and Nancy Orozcko, all of whom saw defendant running with another man from the alley where Zarco was shot but none of whom witnessed the actual shooting. Ortiz testified that she walked behind defendant and Zarco on Pulaski for a couple of minutes but crossed the street when their loud talking made her nervous. She turned onto Nelson, heard a gunshot, and then saw defendant

running with a gun in his hand. Defendant tucked the gun into his waistband and ran into an alley with another man. Later that night, she viewed a physical lineup and identified defendant as the person she had seen with Zarco and later running out of the alley with a gun.

¶ 11    Gordillo testified she was eating lunch in the dining room of her second-floor apartment in the 4000 block of West Nelson, when she heard a gunshot that sounded like it came from the alley. She opened the window, looked in the alley, and saw a young Hispanic man lying on the ground. She also saw defendant standing next to some garbage cans and a third man standing next to the victim. Defendant had something in his hand, but Gordillo did not know if it was a backpack. Defendant and the third man ran through the alley in the same direction, one after the other, across the street, and into the alley on the other side. She later identified defendant in a physical lineup.

¶ 12    Nancy Orozcko testified she was eating lunch with Gordillo when she too heard a gunshot. She looked out the window and saw a man lying on the ground and two other men running away from her toward an alley. She did not see either man's face but saw one of the men had "a very shiny bald" head with "two dents in the back." The bald man was holding the front of his pants as he ran and the other man was carrying a backpack. About 20 minutes later, a police officer drove Orozcko about two blocks south to look at two men who were in police custody. The police showed Orozcko the back of the men's heads, and she recognized defendant as the man who had been holding the front of his pants because of his body shape, "very unique-shaped head," and clothing.

¶ 13    Detective Paul Peraino testified that, on October 2, 2012, he received an Office of Emergency Management and Communications (OEMC) message regarding a person who had been shot and a description of a fleeing offender. Around 2:10 p.m., "within minutes" of receiving the OEMC message, Peraino saw defendant sitting in the passenger seat of a sedan driven by Frank

Gladney, which was leaving the vicinity of the shooting. He pulled the vehicle over, and Orozcko was brought to the scene, where she identified defendant. Peraino searched defendant's person and the sedan but did not find a gun, money, backpack, or drugs.

¶ 14    The State rested. Defense counsel informed the trial court defendant had elected not to present any evidence. The court asked defendant whether he understood he had the right to testify and, while his attorney could give him advice, it was his choice whether to testify. Defendant stated he understood. The court also asked defendant whether he had been promised anything or threatened to keep him from testifying, and defendant indicated he had not. Finally, the court asked defendant whether he understood his attorney was resting without calling witnesses and whether he agreed with that decision, and defendant answered in the affirmative.

¶ 15    In closing, defense counsel argued defendant had been misidentified as the offender. In announcing its findings, the trial court noted the witnesses had testified clearly and credibly and had no motive to lie. The court found defendant did not act with the intent to kill but "most certainly went there with the decision to rob," and he, in fact, knowingly took the backpack from Zarco by the use of force, "that being shooting and personally dicharg[ing] the firearm" into Zarco's stomach. The court also found defendant's personal discharge of the firearm caused great bodily harm to Zarco. Accordingly, the court found defendant guilty of the armed robbery counts, not guilty of the attempt first degree murder counts.[2]

---

[2]It is not clear whether the trial court found defendant guilty of the aggravated battery with a firearm count. The court stated "the great bodily harm takes care of the aggravated battery" but did not state whether there was a finding of guilt entered on that count. In any event, we find this discrepancy to be of no consequence where the court did not impose sentence on the count.

¶ 16    Thereafter, at defendant's request, the court granted trial counsel leave to withdraw, and defendant asked the court for a continuance to file a "*Krankel* motion" (*People v. Krankel*, 102 Ill. 2d 181 (1984)). Instead, the court appointed a public defender to assist defendant with his posttrial motion.

¶ 17    Defendant filed a supplemented motion for a new trial, which included, *inter alia*, a claim of ineffective assistance of trial counsel based on counsel's failure to investigate and present the affirmative defense of self-defense. Defendant attached three affidavits to the motion. After a hearing, during which the State presented testimony from trial counsel, the trial court denied the motion.

¶ 18    The trial court thereafter found defendant was eligible for a mandatory sentence of life imprisonment based on his criminal history and sentenced him accordingly. Defendant filed a motion to reconsider sentence, which the court denied. This appeal followed.

¶ 19    On appeal, defendant contends that his trial counsel was ineffective for failing to investigate and present the affirmative defense of self-defense based on an unreasonable assessment of the case.

¶ 20    Before addressing the merits of defendant's argument, we note the parties dispute the applicable standard of review. Defendant, citing *People v. Ortega*, 2020 IL App (1st) 162516, ¶ 24, argues we should apply a bifurcated standard of review, under which we defer to the trial court's factual findings but review *de novo* its ultimate determination as to whether counsel's actions supported an ineffective-assistance claim. The State, citing *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25, argues that when a trial court reaches a determination on the merits of a defendant's posttrial ineffective-assistance claim, we may reverse only if the trial court's action

was manifestly erroneous. We need not resolve the parties' dispute, however, because the result in this case would not change under either standard of review.

¶ 21 To prevail on a claim of ineffective assistance of counsel, the defendant must show his counsel's performance fell below an objectively reasonable standard and the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Caballero*, 126 Ill. 2d 248, 259-60 (1989). "More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." (Internal quotation marks omitted.) *People v. Cherry*, 2016 IL 118728, ¶ 24. Because defendant must meet his burden on both the performance and prejudice prongs, courts may resolve ineffective assistance claims by deciding only the prejudice prong. See *id.*

¶ 22 The State argues counsel was not ineffective because the affirmative defense of self-defense is not available as a defense to forcible felonies such as armed robbery. According to the State, self-defense was not a viable defense with respect to the armed robbery charges because the taking of the backpack from Zarco, who was lying wounded on the ground when it was taken, could not possibly have been justified by defendant's purported need to defend himself from Zarco. We agree.

¶ 23 Under Illinois law, the defense of self-defense is not available to a defendant who is committing, attempting to commit, or escaping after having committed a forcible felony such as armed robbery. 720 ILCS 5/7-4 (West 2012); 720 ILCS 5/2-8 (West 2012) (robbery is a forcible felony); see also *People v. Gates*, 47 Ill. App. 3d 109, 115 (1977) (the defense of self-defense was

unavailable to the defendant because he was accountable for the commission of an armed robbery). On this point, *People v. Graves*, 133 Ill. App. 3d 546 (1985), is instructive.

¶ 24    In *Graves*, the defendant was charged with armed robbery and unlawful restraint. At trial, the victim testified he went to the defendant's apartment after meeting him at a bar in Chicago. At the apartment, the two began to struggle, during which the victim "was kicked and beaten, bound with neckties from the closet, threatened with knives from the kitchen[,] and asked for money." *Id.* at 547. The defendant eventually took the victim's college ring, his keys, and a dollar bill before leaving. *Id.* The defendant testified the victim invited him back to his apartment, sexually assaulted him, and grabbed a knife, after which the defendant struck, choked, and kneed the victim until he obtained possession of the knife. *Id.* The defendant also testified the victim retreated, asked not to be cut, and gave the defendant a dollar, which the defendant then threw back in the victim's face. *Id.* During the jury instruction conference, the defendant tendered an instruction on the issue of self-defense, which the trial court refused pursuant to the State's objection. *Id.* at 548.

¶ 25    On appeal, the defendant argued the trial court's refusal of his self-defense instruction was error. *Id.* The appellate court rejected the defendant's argument, finding that, under Illinois law, a claim of self-defense is not available to a person who is attempting to commit, committing, or escaping after the commission of, a forcible felony. *Id.* at 549. The appellate court reasoned there was no evidence that either the taking of the victim's property or the imposition of restraints upon him was the product of the defendant's fear for his own safety. *Id.*

¶ 26    Here, the evidence at trial established that Zarco met with defendant in order for them to complete a narcotics transaction. Zarco's backpack contained two pounds of marijuana, a fact defendant knew because Zarco told him it was on his person. As Zarco laid on the ground after

having sustained a gunshot wound, he felt another person tugging on his backpack. Zarco initially resisted the attempt to take the backpack but, when he observed defendant begin to assist the other person, he surrendered the backpack to avoid further harm.

¶ 27 Even if we were to assume the gun belonged to Zarco, that he and defendant struggled over the weapon, and that defendant turned the gun back on Zarco at which point the gun fired, defendant and his accomplice's taking of Zarco's backpack could not have been justified. At that point, Zarco lay incapacitated on the ground, and defendant could not have reasonably believed the taking of the backpack containing marijuana was necessary to thwart Zarco's use of force. See *Graves*, 133 Ill. App. 3d at 549. Accordingly, the self-defense claim defendant asserts his trial counsel should have investigated and presented was not a viable defense to the armed robbery charges. Therefore, defendant is unable to establish prejudice under *Strickland*, as the result at trial could not have been different had counsel pursued a self-defense theory. See *Cherry*, 2016 IL 118728, ¶ 24.

¶ 28 For the reasons stated, we affirm the trial court's judgment.

¶ 29 Affirmed.